422 A.2d 1061

**Mary P. WAGNER, Administratrix of the Estate of Edward S. Wagner, Jr., Deceased, Appellant,**

**v.**

**NATIONAL INDEMNITY COMPANY.**

Supreme Court of Pennsylvania.

Argued May 19, 1980.

Decided Sept. 22, 1980.

Reargument Denied Dec. 19, 1980.

158

Neil J. Rovner, Harrisburg, for appellant.

Robert P. Reed, Harrisburg, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

## OPINION OF THE COURT

O'BRIEN, Chief Justice.

The facts of the instant case are not in dispute. Edward S. Wagner, deceased, was a truck driver for Shreiner Trucking Company. The decedent was killed on January 26, 1977, when a company–owned tractor–trailer he was driving ran off the road and overturned. At the time of the accident, decedent did not own a car and thus, had no insurance of his own. Because the accident occurred during the course of decedent's employment, decedent's family has been and continues to receive benefits pursuant to the Workmen's Compensation Act.[1]

Appellant, the Estate of Edward S. Wagner, through Mary P. Wagner, Administratrix, filed a claim with appellee, National Indemnity Company, the no–fault carrier of decedent's employer. Mrs. Wagner sought to obtain the difference between the Workmen's Compensation benefits and her "survivor's benefits" and decedent's "work loss benefits" as provided in the Pennsylvania No–Fault Motor Vehicle Insur-

1. Act of June 2, 1915, P.L. 736, art. I, § 101, *et seq.*, as amended, 77 P.S. § 1, *et seq.*

ance Act.[2]  National Indemnity denied the claim, asserting that it was entitled to the employer's immunity from suit by an employee.  77 P.S. § 481(a) (Supp.1979–80).  Appellant then filed a complaint in assumpsit in the Court of Common Pleas of Dauphin County, alleging that decedent had been covered by Shreiner Trucking's no–fault policy.  The trial court sustained National Indemnity's preliminary objections and dismissed appellant's complaint based on *Turner v. Southeastern Pennsylvania Transit Authority,* 256 Pa.Super. 43, 389 A.2d 591 (1978).  The Superior Court affirmed, *Wagner v. National Indemnity Co.,* 266 Pa.Super. 110, 403 A.2d 118 (1979), and we granted appellant's petition for allowance of appeal.

Section 303 of the Workmen's Compensation Act provides:
"The *liability of an employer* under this act *shall be exclusive and in place of any and all other liability* to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death ... or occupational disease...".
As amended, Act of December 5, 1974, P.L. 782, No. 263, § 6, 77 P.S. § 481(a) (Supp.1979–80).  (Emphasis added).
This section, which was enacted five months after passage of the No–Fault Act admits no exception;  the liability of an employer to an employee is limited to the Workmen's Compensation Act.

■  Appellant argues, however, that two sections of the No–Fault Act evince the legislature's intention to create an exception to Section 303 of the Workmen's Compensation Act.  Appellant believes that Sections 204 and 206 of the No–Fault Act must be read to allow recovery by appellant under no–fault on the instant facts.  We do not agree.

Section 204 provides:
"(a) Applicable security.–The security for the payment of basic loss benefits applicable to an injury to:

2.  Act of July 19, 1974, P.L. 489, No. 176, art. I, § 101, *et seq.*, 40 P.S. § 1009.101, *et seq.* (Supp.1979–80).

"(1) an employee, or to the spouse or other relative of any employee residing in the same household as the employee, if the accident resulting in injury occurs while the victim or deceased victim is driving or occupying a motor vehicle furnished by such employee's employer, is the security for the payment of basic loss benefits covering such motor vehicle or, if none, any other security applicable to such victim;

"(2) an insured is the security under which the victim or deceased victim is insured;

"(3) the driver or other occupant of a motor vehicle involved in an accident resulting in injury who is not an insured is the security covering such vehicle;

"(4) an individual who is not an insured or the driver or other occupant of a motor vehicle involved in an accident resulting in injury is the security covering any motor vehicle involved in such accident. For purposes of this paragraph, a parked and unoccupied motor vehicle is not a motor vehicle involved in an accident unless it was parked so as to cause unreasonable risk of injury; and

"(5) any other individual is the applicable assigned claims plan." 40 P.S. § 1009.204 (Supp.1979–80).

Further, Section 206 provides:

". . . Except as provided in section 108(a)(3) of this act, all benefits or advantages (less reasonably incurred collection costs) that an individual receives or is entitled to receive from social security (except those benefits provided under Title XIX of the Social Security Act and except those medicare benefits to which a person's entitlement depends upon use of his so–called 'life–time reserve' of benefit days) workmen's compensation, any State–required temporary, nonoccupational disability insurance, and all other benefits (except the proceeds of life insurance) received by or available to an individual because of the injury from any government, unless the law authorizing or providing for such benefits or advantages makes them excess or secondary to the benefits in accordance with this act, shall be subtracted from loss in calculating net loss." 40 P.S. § 1009.206(a) (Supp.1979–80).

We do not believe, however, that either of the above–quoted sections creates any exception to the exclusivity of remedy section of the Workmen's Compensation Act.

As the Superior Court stated in *Turner v. Southeastern Pennsylvania Transit Authority, supra,* 256 Pa.Super. at 46, n. 2, 389 A.2d at 593, n. 2:

"Were we to decide that the Workmen's Compensation Act and the No–fault Act were in any manner irreconcilable, the iron–clad exclusivity provision contained in the 1974 amendment to Section 303 would control. 'Whenever the provisions of two or more statutes enacted finally during the same General Assembly are irreconcilable, the statute latest in date of final enactment irrespective of its effective date, shall prevail.' Statutory Construction Act, Act of May 28, 1937, P.L. 1019, art. IV, § 65, 46 P.S. § 565.

"We are of the opinion that if any exception had been created by the No–fault Act, the legislature would surely have seen fit to incorporate the exception when it amended Section 303 of the Workmen's Compensation Act. 'Any question as to the intention of the legislature that the remedy created by the Workmen's Compensation Act be exclusive is removed by [the 1974 amendment].' *Greer v. United States Steel Corp.,* 237 Pa.Super. 597, 600, 352 A.2d 450, 451 (1975), rev'd on other grounds, 475 Pa. 48, 380 A.2d 1221 (1977)."

We agree with the Superior Court that if the applicable sections were irreconcilable, Section 303 of the Workmen's Compensation Act would have to control for the reasons set forth by the Superior Court; we nonetheless shall try to reconcile the No–Fault Act and the Workmen's Compensation Act.

Any analysis must start with the plain meaning of Section 303 of the Workmen's Compensation Act which in clear and unambiguous words states that liability under workmen's compensation is the exclusive liability of an employer to an employee for injury, death or occupational disease. As a broad, remedial statute, the act was passed to protect employees and their families by insuring a quick and

certain payment for work–related injuries without having to resort to the courts. As the Superior Court stated in *Greer v. United States Steel Corp., supra,* 237 Pa.Super. 597 at 599, 352 A.2d 450:

"With the enactment of the first Workmen's Compensation Act by the legislature in 1915, Act No. 338, June 2, 1915, P.L. 736, 77 P.S. § 1 et seq., and its companion, the Occupational Disease Act, Act of June 21, 1939, P.L. 566, No. 284, 77 P.S. § 1201, et seq., and the amendments made periodically thereto, it has been the clear legislative intent to provide an accessible, expert and easy forum for the handling of all claims for occupational injury and disease; to provide for prompt payment of all costs for all medical expenses and reasonable income loss payments to the employee or his dependents; to reduce the costs and delays of personal injury court trials and eliminate unnecessary payment of fee to lawyers, witnesses as well as time consuming trials and appeals; and to accomplish this without assessing fault to the employee or employer while the employer is freed from the threat of court suit."

Thus, under the Workmen's Compensation Act, both the employer and the employee relinquished certain rights to obtain other advantages. For the worker, he no longer had to prove negligence; in return, the employee had to accept a limited, though certain, recovery. The employer, on the other hand, guaranteed compensation to an injured employee in return for the exclusivity of the workmen's compensation liability to its employees.

The Superior Court has wrestled with the problem that now confronts us. In *Turner v. Southeastern Pennsylvania Transit Authority, supra,* a bus driver was injured in a collision between his bus and another vehicle. Turner was denied workmen's compensation benefits because he refused to submit to a physical examination. Turner then attempted to sue SEPTA, and obligated government under no–fault. 40 P.S. § 1009.104(b) and (c); 31 Pa.Code § 66.1–104(a). Turner argued, as appellant argues instantly, that Sections 204 and 206 of the No–Fault Act created an exception to

Section 303 of the Workmen's Compensation Act. The court first discussed Section 204, in which the legislature stated that the first place to look for coverage is to an employer's no–fault policy where the employee is driving a vehicle furnished by the employer. As the Court stated:

"[Section 204], we believe, was intended to complement the Workmen's Compensation Act rather than supplant it. We interpret it to apply to situations other than the one where the employee is covered by Workmen's Compensation, such as when an employee or his relatives are injured while driving a vehicle furnished by the employer for their private use." *Turner v. Southeastern Pennsylvania Transit Authority, supra,* 256 Pa.Super. at 47, 389 A.2d at 593.

We are in basic agreement with the statement of the Superior Court, though we believe a minor refinement is in order.

In *Gradler v. Prudential Property & Casualty Insurance Co.,* 464 F.Supp. 575 (W.D.Pa.1979), an employee was using a vehicle furnished by his employer and was involved in an accident; at the time, the employee was not using the vehicle for any work–related activity and thus was not covered by workmen's compensation. As such, the District Court held that the employer's no–fault carrier was liable to the employee under Section 204(a)(1) of the No–Fault Act.[3] We believe, however, that an employer's no–fault carrier could also be liable when the vehicle is being used for work–related purposes. Under Section 204(a)(1), an employee's spouse or other relative residing in the employee's household is covered. Thus, while an employee could only recover under workmen's compensation where the accident occurred during the course of the employee's employment, a spouse or relative injured while in the employer's vehicle could recover from the employer's no–fault carrier.[4]

3. The Court held that the employer's no–fault carrier was liable despite the fact that a friend of the employee was driving the vehicle.

4. While § 303 of the Workmen's Compensation Act appears to apply to spouses and relatives of the employee, our reading indicates that the bar applies only when the spouse or relative attempts to claim through the employee for a work–related injury.

Section 206 of the No–Fault Act provides that any workmen's compensation benefits paid must be deducted from loss to determine "net loss", the amount for which a no–fault carrier is liable. In *Turner v. Southeastern Pennsylvania Transit Authority, supra,* 256 Pa.Super. at 48, 389 A.2d at 594, the Court stated:

> "The reference to workmen's compensation in this section is admittedly not entirely clear. It may well be, as appellee argues, that Section 206 is intended to provide for subtraction of workmen's compensation benefits received from the employer, from any no–fault recovery obtained by the employee from the insurer of a vehicle owner other than the employer. This could only occur if the employee were injured while using his own car or that of a third party in the course of conducting his employer's business. Thus Section 206 does not apply to a situation such as that presented in the instant case–i. e. when the employee is driving the *employer's* vehicle while conducting the employer's business." (Emphasis in original.)

In *Brunelli v. Farelly Brothers,* 266 Pa.Super. 23, 28, 402 A.2d 1058, 1061, n.6 (1979), the Court withdrew somewhat from its position in *Turner,* stating:

> "A word of caution is in order. The Pennsylvania Workmen's Compensation Act, 77 P.S. § 481, provides that the liability of an *employer* to an employee shall be controlled exclusively by that act. The Workmen's Compensation Act does not affect an employee's cause of action against a *third party* tortfeasor, except for prohibiting the third party from recovering contribution from the employer for damages which the third party is required to pay to the employee–victim (77 P.S. § 481). No–fault applies to an action between the employee and the third party. *Turner v. Southeastern Pennsylvania Transportation Authority,* 256 Pa.Super. 43, 389 A.2d 591 (1978), did not contemplate the situation which now confronts us. Although the basic decision in Turner was correct, the dictum in Turner was incorrect insofar as it indicated that No–fault § 206(a) (providing for subtraction

of workmen's compensation benefits from 'loss' in calculating 'net loss') did not apply when an employee was driving the employer's car." (Emphasis in original).

We believe the later position is correct, though somewhat confusing with its reference to a third party tortfeasor.

■ Under no–fault, a party may not be sued in tort except where the victim's basic loss benefits exceed the no–fault recovery limits. 40 P.S. § 1009.301 (Supp. 1979–80); *Brunelli v. Farelly Brothers, supra.* However, where an employee is injured in an accident and is covered by workmen's compensation, this by no means precludes recovery under no–fault; Section 303 of the Workmen's Compensation Act precludes recovery from the employer only. Thus, while no recovery is allowed under Section 204(a)(1) against the employer's no–fault carrier because of the exclusivity section of workmen's compensation, an insured employee could recover under Section 204(a)(2)–(5) if applicable. From this recovery, the workmen's compensation benefits would be deducted as called for in Section 206 of the No–Fault Act.

■ Appellant argues that *Turner v. Southeastern Pennsylvania Transit Authority, supra,* is inapplicable because while Turner attempted to sue his employer, SEPTA, an obligated government (self–insurer), the appellant is instantly attempting to sue the employer's no–fault carrier. We find the proposed distinction to have no legal relevance, for an insurer provides coverage for an employer's possible liability and has no independent basis for liability on its own part. Further, the No–Fault Act provides that an " 'obligor' means an insurer, self–insurer or obligated government providing no fault benefits in accordance with this act." 40 P.S. § 1009.103 (Supp. 1979–80). The act mandates a motor vehicle owner to provide protection, either by providing self–insurance or by purchasing insurance and the liability under the act arises from the obligation to provide that protection.

■ Appellant further argues that the only class of insurers entitled to assert the immunity under Section 303 of the Workmen's Compensation Act are those insurers that provide workmen's compensation coverage. This argument, however, flies in the face of the clear and unambiguous language of Section 303 which states:

"The liability of an employer under this act shall be exclusive and *in place of any and all other liability* to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages *in any action of law or otherwise* on account of injury or death ... or occupational disease...." 77 P.S. § 481(a) (Supp. 1979–80).

Appellant argues that should a no–fault carrier be allowed to assert the Section 303 immunity, an insurer providing life insurance benefits could likewise avoid liability under Section 303. Appellant overlooks the fact that employers must provide no–fault coverage and workmen's compensation coverage. Any fringe benefits, such as life insurance or disability insurance, are voluntarily bargained for and have an independent contractual vitality. The employer or his insurance carrier for these fringe benefits would be, in our view, precluded from asserting the Section 303 immunity.

■ Appellant next asserts that the following section of the No–Fault Act evidences the legislature's intention to create an exception to Section 303:

"(a) Findings.–The General Assembly hereby finds and declares that:

\*     \*     \*     \*     \*     \*

"(3) the maximum feasible restoration of *all individuals injured* and compensation of the economic losses of the survivors of *all individuals killed* in motor vehicle accidents on Commonwealth highways, in intrastate commerce, and in activity affecting intrastate commerce is essential to the humane and purposeful functioning of commerce;

\*     \*     \*     \*     \*     \*

"(6) careful studies, intensive hearings, and some State experiments have demonstrated that a basic system of motor vehicle accident and insurance law which:

"(A) *assures every victim* payment of all his basic medical and rehabilitation costs, and recovery of a reasonable amount of work loss, replacement services and survivor's loss; and

"(B) eliminates the need to determine fault except when a victim is very seriously injured,

is such a low–cost, comprehensive, and fair system;

"(7) adoption of the system described in paragraph (6) in place of the system described in paragraph (5) would remove an undue burden on commerce;

"(b) Purposes.–Therefore, it is hereby declared to be the policy of the General Assembly to establish at reasonable cost to the purchaser of insurance, a Statewide system of prompt and adequate basic loss benefits for motor vehicle accident victims and the survivors of deceased victims." 40 P.S. § 1009.102 (Supp. 1979–80).

As we noted, because Section 303 was amended after passage of the No–Fault Act, and Sections 204 and 206 of the No–Fault Act do not create an exception to Section 303, we are loath, and in fact are unable, to find the above–quoted prefatory section compels a different result.

■ Appellant finally argues that by denying the instant appellant no–fault coverage, we would unconstitutionally discriminate against professional drivers in that they would be denied the full coverage applicable to all other drivers. As previously mentioned, a professional driver would be limited to workmen's compensation benefits only in a situation identical to the instant one; i. e., where the driver carries no insurance of his own on his own vehicle and no other vehicle is involved in the injury–producing accident. Further, when confronted with the instant situation, we can perceive no unconstitutional discrimination, for we believe the legislature reasonably can determine that an injured employee such as the decedent in the instant case should be treated no differently than an employee suffering a similar

injury while working in his employer's factory; both are limited to workmen's compensation benefits. Section 303 provides that workmen's compensation affords the exclusive remedy to an employee injured while at work unless the employer voluntarily relinquishes the protection of the limited liability. Because no–fault coverage is statutorily mandated, there is no such voluntary relinquishment by the employer by providing no–fault coverage.

In sum, an employee injured in the scope of his employment while driving his employer's vehicle may recover only workmen's compensation benefits from his employer or the employer's workmen's compensation carrier; such a result is compelled by Section 303 of the Workmen's Compensation Act. The injured employee may, if applicable, proceed against any of the applicable security mentioned in Section 204(a)(2)–(5). Should the employee recover no–fault benefits, workmen's compensation benefits must first be deducted from any no–fault benefits to be paid. Should an employee be using his employer's vehicle for private non–work related reasons, the employee could recover from his employer's no–fault carrier. As none of Section 204(a)(2)–(5) applies to the instant case, appellant must be denied payment under no–fault.

Order of Superior Court is affirmed.

EAGEN, C. J., concurs in the result.

NIX, J., joins in the opinion of the court and files a separate concurring opinion.

LARSEN, J., files a dissenting opinion in which KAUFFMAN, J., joins.

FLAHERTY, J., files a dissenting opinion.

KAUFFMAN, J., files a dissenting opinion in which LARSEN, J., joins.

NIX, Justice, concurring.

I am in complete accord with the reasoning of the majority opinion, and join therein. I write this concurring state-

ment in response to the dissent authored by Mr. Justice Kauffman. I believe that the position in the dissent, which has been well articulated, has a basic flaw which should be identified.

Mr. Justice Kauffman asserts, "liability of the employer is not the issue here." P. 1070. No–fault coverage, although statutorily mandated, is no more than a contract of indemnity. The error of the dissent is that it has limited the concept of liability to that which arises from the negligent conduct of the insured. Liability also embraces obligations imposed by law, even though they are not associated with fault. The provision of the policy of insurance in question was intended to cover the liability of Shreiner Trucking Company created under the Pennsylvania No–Fault Motor Vehicle Insurance Act.[1]

Any suggestion of a third party donee beneficiary contract is unrelated to the realities of the situation and establishes the type of fiction that is antagonistic to realistic dispute resolutions. It is not the role of the judiciary to define what in their judgment should be, but rather to meet our responsibility of clarifying that which the legislature intended. The merits of that legislative judgment must be left for the scrutiny of the public.

LARSEN, Justice, dissenting.

I dissent. In this case, the estate of a deceased driver has sued the no–fault insurance carrier which insured the vehicle involved. That carrier has attempted to avoid its obligations under its no–fault policy and the No–Fault Motor Vehicle Insurance Act, 40 P.S. §§ 1009.101–1009.701 by asserting the *employer's* immunity embodied in section 303 of the Workmen's Compensation Act, 77 P.S. § 481(a) ("The liability *of an employer* under this act shall be exclusive and in place of any and all other liability . . . (emphasis added)"). Thus, the issue is whether a no–fault carrier may avail itself of the immunity *granted to an employer* under section 303–

1. No–Fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, No. 176, Art. 1, § 102; 40 P.S. § 1009.102 (Supp. 1979–80).

*not* whether section 303 allows a "no–fault exception." [1] The majority finds the distinction between an employer and that employer's no–fault carrier to have no legal relevance, "for an insurer provides coverage for an employer's possible liability and has no independent basis for liability on [the insurer's] its own part." At 1067. While this may be true, it is not dispositive of the issue, and it ignores the fact that a *no fault insurer* provides coverage *only for* an insured's *no–fault liability, not for possible workmen's compensation liability.* Contrary to the majority's assertion, the distinction *is* significant, as, the only insurer entitled by statute to share an employer's section 303 immunity is the employer's workmen's compensation carrier.[2] That shared immunity does not extend to insurance carriers who insure an employer for types of liability other than that provided for in the Workmen's Compensation Act. *See* 77 P.S. § 701, note 2 *supra.*

On the distinction between an employer and the employer's no–fault carrier, the majority adds

1. The majority states "Appellant argues, however, that two sections of the No–Fault Act evidence the legislature's intention to create an exception to section 303 of the Workmen's Compensation Act." At 1064. While this statement may be an appropriate lead–in to the majority's "no–fault exception" analysis, it is an unfair characterization of appellant's argument. Appellant specifically states *"The issue* in the case at bar, therefore, *is not whether the No–Fault Act provides an exception* to the prohibition of suit by an employee against an employer. The question presented in this petition and in the courts below is *whether any law exempts an employer's no–fault carrier from fulfilling its contractual and legal obligations under the No–Fault Act."* Brief for Appellant at 12. (latter emphasis in original).

2. The employer's immunity of section 303 is extended to his workmen's compensation insurance carrier by section 401, 77 P.S. § 701, which provides: "The term 'employer,' when used in this article, shall mean the employer as defined in article one of this act, or his duly authorized agent, *or his insurer if such insurer has assumed the employer's liability* or the fund if the employer be insured therein." (emphasis added). That section also states "insurance" and "carrier" "when used in this article, shall mean the State Workmen's Insurance Fund or other insurance carrier *which has insured the employer's liability under this act,* or the employer in cases of self–insurance." (emphasis added).

"Further, the No–Fault Act provides that an " 'obligor' means an insurer, self–insurer or obligated government providing no fault benefits in accordance with this act." 40 P.S. § 1009.103 (Supp. 1979–80). The act mandates a motor vehicle owner to provide protection either by providing self–insurance or by purchasing insurance and the liability under the act arises from the obligation to provide that protection."

At 1067. I fail to perceive the significance of this item that a no–fault insurer is an "obligor" under the No–Fault Act adds nothing to the analysis of whether that insurer is an "employer" under the Workmen's Compensation Act or of whether that insurer should share the employer's section 303 immunity.

For the foregoing reasons, I would reverse the Order of the Superior Court and remand for proceedings consistent with this opinion.

KAUFFMAN, J., joins in this dissenting opinion.

FLAHERTY, Justice, dissenting.

I dissent. The issue is not whether the No–Fault Motor Vehicle Insurance Act[1] allows an exception to the prohibition on suits by employees against employers, but rather whether an employer's no–fault carrier is exempted from complying with its independently contracted for duty to compensate injured parties. Here, unlike the situation in *Turner v. Southeastern Pennsylvania Transportation Authority*, 256 Pa.Super. 43, 389 A.2d 591 (1978), neither an employer nor an employer's workmen's compensation insurance carrier is being sued. Section 303 of the Workmen's Compensation Act[2] clearly limits the liability of "employers" but provides no basis for a no–fault insurance company to escape liability by assuming the cloak of an employer.

1. Act of July 19, 1974, P.L. 489, No. 176, art. I, § 101, *et seq.*, 40 P.S. § 1009. 101, *et seq.* (Supp.1979–80).

2. As amended, Act of December 5, 1974, P.L. 782, No. 263, § 6, 77 P.S. § 481(a) (Supp.1979–80).

Whether, if sued, the no–fault insurance company would in fact owe compensation under the terms of its contract is not determinative of whether the insurance company shares the employer's immunity from suit.   Nor is it significant that no–fault is required coverage rather than a voluntarily bargained for employee fringe benefit:  the contractual obligation is the same regardless of the reason coverage was obtained.   The majority opinion authored by Mr. Justice O'Brien makes reference to the No–Fault Act's declared policy of assuring *all* accident victims compensation, but denies no–fault compensation in appellant's case.   Such a result too broadly interprets the immunity established by the Workmen's Compensation Act and provides a windfall escape from liability for insurance companies.

KAUFFMAN, Justice, dissenting.

The majority asserts that an employee injured in the course of his employment while occupying his employer's motor vehicle cannot collect no–fault benefits from his employer's no–fault carrier because of the exclusivity of workmen's compensation as a remedy for the employer's liability.[1] But, despite the majority's assumption to the contrary, liability of the employer is not the issue here.   I would grant recovery on the basis of contract rights which accrue to the employee without regard to the interposition of the employer's liability.

In recognition of the fact that certain rights flowed *directly* to employees and others from the employer's contract with his no–fault carrier without regard to *liability* of the employer, the majority opinion concedes that the employee could have collected under his employer's no–fault coverage had he been driving a company vehicle while outside the scope of employment.[2]

1.  Section 303 of the Workmen's Compensation Act (Act of June 2, 1915, P.L. 736, Art. I, § 101 et seq., as amended, 77 P.S. § 1 et seq.) (77 P.S. § 481).

2.  The majority, referring to coverage of the employee's family, further suggests that "the no–fault carrier could also be liable when the

The contract guarantees that if certain circumstances arise the insurer will make payment, not on a theory of the *employer's* liability but simply under the terms of the contract. An injury occurring in or by the employer's vehicle triggers the *insurance company's* duty to pay. The employer is not indemnified for "liability" arising out of any theory of the common law. A contract has been drawn to protect, regardless of the employer's liability, the interests of a class of persons—i. e. "motor vehicle accident victims and the survivors of deceased victims"[3]—which obviously includes employees whether acting in the course of employment or not.

The majority finds that "an insurer provides coverage for an employer's possible liability and has no independent basis for liability on its own part." (P. 1067) This is a theory of indemnification which is totally inconsistent with the law as explicated in the rest of the opinion. If the employee could recover from his employer's no–fault carrier while using his employer's vehicle for private, non–work related reasons (p. 1068), and if the employee's wife could recover even if the vehicle were being used during the course of his employment (p. 1066), the basis for recovery clearly would *not* be the *liability* of the employer, but a direct and independent duty to pay contractually undertaken by the insurance company when it provided coverage.

The majority's logic appears to be as follows: The relationship of the no–fault carrier to the employer is one of indemnification; the statute restricts the right of recovery against the employer to workmen's compensation; if the employer cannot have any other liability, then there can be nothing to indemnify; thus the insurance company cannot

vehicle is being used for work related purposes." (P. 1066). "Thus," continues the majority, "while an employee could only recover under workmen's compensation where the accident occurred during the course of the employee's employment, a spouse or relative injured while in the employer's vehicle could recover from the employer's no–fault carrier." (P. 1066).

3. No–Fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, No. 176, Art. I, § 102; 40 P.S. § 1009.102 (Supp. 1979–80).

have an obligation to pay. The indemnification theory is essential to bootstrap the rest of the argument. There is, however, no language in the no–fault statute to indicate that the indemnification theory is correct. And its application here suggests an artificial construction of the Workmen's Compensation Act which I cannot believe was intended by the Legislature.

Moreover, the majority's reasoning would completely thwart the purpose of no–fault insurance if taken to its logical conclusion. If I give an uninsured person permission to drive my car and that person falls asleep at the wheel and is injured when the car runs off the road, he can recover from my no–fault carrier, despite the fact that he would have no cause of action against me. Yet, under the theory of the majority, if consistently applied, since the insurance company's liability would be predicated solely on my liability, the driver's claim against the carrier would fail.[4]

In *Mathis v. Interstate Motor Freight System*, 408 Mich. 164, 289 N.W.2d 708 (1980), the Supreme Court of Michigan was faced with questions identical to those now before us. There, too, it was argued that recovery under the Michigan No–Fault Insurance Act (M.C.L. §§ 500.3101–500.3179) was restricted by the language of the Michigan Worker's Disability Compensation Act (M.C.L. §§ 418.101–418.941). In rejecting this analysis, the Court held:

4. Appellant argued that should a no–fault carrier be allowed to assert the Section 303 immunity, an insurer providing life insurance benefits could likewise avoid liability under Section 303. The majority summarily dismissed this argument by stating the following non–sequitur: "Appellant overlooks the fact that employers must provide no–fault coverage and workmen's compensation coverage. Any fringe benefits, such as life insurance or disability insurance, are voluntarily bargained for and have an independent contractual vitality. The employer or his insurance carrier for these fringe benefits would be, in our view, precluded from asserting the Section 303 immunity". (P. 1067) The "voluntary" aspect of life insurance or disability insurance benefits is totally irrelevant to the issue of liability under Section 303. That the employer has a statutory mandate to provide no–fault coverage on his vehicles has nothing to do with immunity under Section 303, nor is it an element of the majority's theory barring recovery under no–fault in the instant case.

. . . . The exclusive remedy provision applies to actions against the employer. Here the cause of action is directly against the no–fault insurance carrier. Because the cause of action is not against the *employer,* the exclusive remedy provision of the WDCA is not applicable and is not a bar to the employee's cause of action.[5]

The case relied upon by the Court below, *Turner v. Southeastern Pennsylvania Transit Authority* ("SEPTA"), 256 Pa. Super. 43, 389 A.2d 591 (1978), is quoted extensively in the majority opinion to support its conclusion that Sections 204 and 206 of the No–Fault Act[6] do not create an exception to Section 303 of the Workmen's Compensation Act. The Superior Court's discussion in *Turner,* however, is essentially meaningless with regard to disposition of the issue before us.

*Turner,* as cited in the majority opinion, indicates that Section 303 would control *if* it were irreconcilable with the No–Fault Act. Further, it says that *if* an exception were created by the No–Fault Act, it would have been incorporated into the language of Section 303. The simplest and, to me, most persuasive view of the application of the No–Fault Act when workmen's compensation is available, is that the Legislature did not make itself more explicit because it did not regard the pertinent sections as "irreconcilable". Thus it was unnecessary for one act to create an exception to the other.[7]

*Turner* suggests that Section 204 was intended to "complement" the Workmen's Compensation Act rather than

**5.** 289 N.W.2d at 714. The majority here concedes that, "Section 303 of the Workmen's Compensation Act precludes recovery *from the employer only.*" (P. 1067) (Emphasis supplied). This necessarily follows from the language of Section 303 which expressly limits the exclusivity of remedy to "[t]he *liability of the employer*". (Emphasis supplied).

**6.** 40 P.S. § 1009.204, § 1009.206 (see note 3, *supra*).

**7.** The Michigan Court in *Mathis, supra,* found it unnecessary to adjudicate whether one act constituted an exception to the other by noting:
    The Worker's Disability Compensation Act (WDCA) and the No–Fault Insurance Act are complete and self–contained legislative schemes addressing discrete problems. . . . 289 N.W.2d at 712.

supplant it. 256 Pa.Super. 47, 389 A.2d 593. I agree. But I do not see how the application of no–fault in the present case could in any way vitiate the operation of the Workmen's Compensation Act. To the contrary–what the Superior Court in *Turner* and the majority here conclude necessarily *causes the Workmen's Compensation Act to supplant Section 204.*[8]

The *Turner* Court created an otherwise non–existent problem out of needless speculation about possible conflict between the statutes. Similarly, in the instant case, the majority's effort to juxtapose Sections 204 and 206 of the Pennsylvania No–Fault Act with Section 303 of the Workmen's Compensation Act is superfluous. The plain meaning of Section 206 is consistent with Section 303.[9]

Section 303 deals only with the *employer's* liability to the employee for work–related injuries. It substitutes the statutory remedy for all common law remedies. It nowhere suggests that by its operation a party with a contractual relationship to the employer (a relationship which has as its object, *inter alia*, the protection of employees) is suddenly freed from its obligations on that contract. Nor has the majority opinion indicated that such an exclusion appeared in the no–fault contract or anywhere else.

The same conclusion was reached by the New York Court of Appeals in *Ryder Truck Lines, Inc. v. Antonio Maiorano,*

**8.** The *Turner* Court's confusion about the meaning of these statutes becomes apparent from the majority's own citation (p. 1066). A key aspect of Turner's reasoning with respect to the applicability of the No–Fault Act (*Turner, supra,* 256 Pa.Super. at 48, 389 A.2d 593)–
  "... Section 206 does not apply to a situation such as that presented in the instant case–i. e., when the employee is driving the employer's vehicle...." (Emphasis in original)–
was overturned (with the approval of the majority in the present case) by *Brunelli v. Farelly Brothers,* 266 Pa.Super. 23, 402 A.2d 1058 (1979) (p. 1067).

**9.** Section 206 provides: "... [A]ll benefits ... an individual receives ... from workmen's compensation ... shall be subtracted from loss in calculating net loss". Appellant here sought only the difference between workmen's compensation benefits and no–fault benefits.

44 N.Y.2d 364, 370, 405 N.Y.S.2d 666, 670, 376 N.E.2d 1311, 1315 (1978):

> We find nothing in the no–fault insurance law itself, or in the legislative circumstances surrounding its adoption, which suggest that with the general replacement of former tort liability by first–party benefits (to the extent of basic economic loss as defined by the new statute) it was intended that the benefits of the new program should not be available to employees injured in the course of their employment. Indeed it is argued that the implications of the no–fault law are to the contrary; basic economic loss is expressly defined to exclude (and thus to be in addition to) workmen's compensation benefits (Insurance Law, § 671, subd. 2, par. [b]).

The New York Court went on to say, "we do not find evidence of legislative integration of the new no–fault program with the existing workmen's compensation program. . . . Rather the evidence is that both programs are self standing. . ."[10]

The majority here makes a needless effort to adjudicate statutory matters which the New York and Michigan courts correctly dismissed as uncognizable.[11]

---

**10.** 44 N.Y.2d at 372, 405 N.Y.S.2d at 671, 376 N.E.2d at 1316.

**11.** *Turner v. SEPTA, supra,* did, however, present a matter which requires additional scrutiny. When an employer is self–insured, as in *Turner,* the no–fault claim must be prosecuted against the very party whose liability is expressly limited to Workmen's Compensation by Section 303. It would be anomalous to allow a cause of action under no–fault to stand or fall on the arbitrary basis of the carrier's identity. This problem was addressed in both *Mathis, supra,* and *Ryder, supra.* The Michigan Court reasoned:

> An employee may have ties with an employer other than the employer–employee relationship. They may be landlord and tenant; trustee and beneficiary; vendor and vendee and so on. We look to the laws governing the particular relationship involved to determine rights and obligations of the parties. The fact that the parties are also employer–employee does not automatically trigger the operation of the exclusive remedy provision of the WDCA. The exclusive remedy provision applies only to employers where conditions of liability under the WDCA pertain.
>
> The injured person in *Mathis* is seeking no–fault benefits from an insurer who happens to be his employer. Any liability to pay

I would hold that an employee who suffers accidental bodily injury in the course of his employment while occupying his employer's motor vehicle is entitled to collect no–fault benefits from his employer's no–fault carrier, and is not limited to workmen's compensation as his sole remedy. I believe that the holding of the majority barring recovery is based upon an unnecessarily strained interpretation of the No–Fault Act and the Workmen's Compensation Act. Accordingly, I would reverse and remand to the Court of Common Pleas for determination of appellant's survivor's benefits.

LARSEN, J., joins in this dissenting opinion.

no–fault benefits is based on the status of being an insurer under the No–Fault Act. 289 N.W.2d at 714–715.

The New York Court summarily stated the same conclusion. 44 N.Y.2d at 372, 405 N.Y.S.2d at 670, 376 N.E.2d at 1316. The short answer, then, is that there can be no escape from a duty to pay on a no–fault policy by the fortuitous coincidence of being both employer and insurer.