## Stern v. West American Insurance Co.

*John J. Dirienzo, Jr.,* for plaintiff.
*Kenneth S. Robb,* for defendant.

SHAULIS, *J.,* August 24, 1982—This matter is before the Court on the joint motion of both parties for summary judgment.

## FACTS

Plaintiff, Robert W. Stern, was involved in a single motor vehicle accident on January 11, 1979 resulting in bodily injury to himself. At the time of the accident, plaintiff was operating a coal truck owned by his employer, Tom Moran Trucking, and in the course of his employment. Due to the injuries sustained, plaintiff was unable to return to his employment for the period beginning January 12, 1979 and ending January 13, 1980.

Plaintiff and defendant, West American Insurance Company, have stipulated that plaintiff's average monthly gross wage would have been $1,776.32 had plaintiff been able to work. Plaintiff received workmen's compensation benefits at the rate of $983.67 per month during this time, thus realizing a net loss of $792.65 per month or $9,511.80 for 12 months.

Plaintiff filed an insurance claim demanding that defendant, plaintiff's personal no-fault insurance carrier, tender this total net loss (less 20 percent as

provided in the No-fault Act) to him. Defendant refused this demand but offered to pay plaintiff the difference between $1,000 and $983.67 for each of the 12 months that plaintiff was disabled. The matter was submitted to arbitration and the panel ruled in favor of the plaintiff. Defendant filed an appeal.

Since both parties allege that no material facts remain to be determined, they have filed a joint motion for summary judgment.

## DISCUSSION

The real issue in this case is whether the limit as set forth in the Pa. No-fault Act in §202(b)(1)(A) is a limit on recovery by the plaintiff or a limit on liability of defendant.

We conclude that the $1,000 maximum limit as set forth in 40 P.S. §1009.202(b)(1)(A) is a limit on the liability of defendant and that summary judgment should be granted in favor of plaintiff on this issue.

The relevant sections of the No-fault Act for purposes of this discussion are as follows:

40 P.S. §1009.103. Definition

As used in this Act:

"Loss" means accrued economic detriment resulting from injury arising out of the maintenance or use of a motor vehicle consisting of, and limited to, allowable expense, work loss, replacement services loss, and survivor's loss.

• • •

"Loss of income" means gross income actually lost by a victim or that would have been lost but for any income continuation plan reduced by:

• • •

"Net loss" means loss less benefits or advantages required to be subtracted from loss in calculating net loss pursuant to this act.

• • •

"Work loss" means:

(A) loss of gross income of a victim as calculated pursuant to the provisions of Section 205 of this Act.

40 P.S. § 1009.202. Basic loss benefits:

"(b) Work loss limits. — Work loss, as defined in Sec. 103 shall be provided:

(1) up to a monthly maximum of:

(A) $1,000.00 multiplied by a fraction whose numerator is the average per capita income in this Commonwealth and whose denominator is the average per capita income in the United States, according to the latest available United States Department of Commerce figures.

(2) up to a total amount of $15,000.00.

• • •

40 P.S. § 1009.206 — Net Loss:

(a) General.—Except as provided in section 108 (a)(3) of this act, all benefits or advantages (less reasonably incurred collection costs) that an individual receives or is entitled to receive from social security (except those benefits provided under Title XIX of the Social Security Act and except those medicare benefits to which a person's entitlement depends upon use of his so-called "life-time reserve" of benefit days) workmen's compensation, any State-required temporary, nonoccupational disability insurance, and all other benefits (except the proceeds of life insurance) received by or available to an individual because of the injury from any government, unless the law authorizing or providing for such benefits or advantages makes them excess or secondary

to the benefits in accordance with this act, shall be subtracted from loss in calculating net loss.

(b) Tax deduction.—If a benefit or advantage received to compensate for loss of income because of injury, whether from No-fault benefits or from any source of benefits or advantages subtracted under subsection (a) of this section, is not taxable income, the income tax saving that is attributable to such loss of income because of injury is subtracted in calculating net loss for work loss. Subtraction may not exceed twenty per cent (20%) of the loss of income and shall be in such lesser amount as the insurer reasonably determines is appropriate based on a lower value of the income tax advantage."

A case in which the facts closely resemble the case at bar was Augostine v. Pennsylvania National Mutual Casualty Insurance Co., 293 Pa. Super. 50, 437 A.2d 985 (1981). The Superior Court stated that although the insured, who was injured while alighting from one of his employer's trucks during the course of his employment, and who applied for and was currently receiving total disability benefits under the Pennsylvania Workmen's Compensation Act . . . could proceed against his own insurer under the No-fault Act for the basic work loss benefits to make up the difference between the actual wage loss and Workmen's Compensation benefits, with Workmen's Compensation benefits deducted from recovery against his insurer. It is thus clear that the recovery of Workmen's Compensation benefits is not the exclusive remedy for an injured employee.

The regulations of the Pennsylvania Code, more specifically 31 Pa. Code §66.54(b), sets forth the formula from which work loss for a regularly employed person is to be determined.

The first step is to compute the gross income actually lost. The parties have agreed by stipulation

that plaintiff's average gross wage per month would have been $1,776.32 but for the accident.

The second step is to compute the net loss. This is accomplished by taking the gross income actually lost and subtracting the value of the benefits and advantages specified in 40 P.S. §1009.206(a), and subtracing the income tax savings in 40 P.S. §1009.206(b). The parties have stipulated that plaintiff received $983.67 per month in Workmen's Compensation benefits. This in turn results in a net loss of $792.65 per month $1,776.32 − $983.67). Of this amount, 20 percent must be deducted to reach the final monthly net loss figure of $634.12 [$792.65 − $158.53 ($792.65 x .20)].

The third and last step in the computations, states that a regularly employed person receives the net loss computed in accordance with this formula subject to the monthly maximum work loss limits in 40 P.S. §1009.202 (b)(1)(A), whichever is less. In other words, plaintiff is entitled to receive from his insurance carrier, the lesser amount of $634.12 or $988. (This figure is the maximum work loss limit for the above cited section during 1979 as published by the Pennsylvania Insurance Department in Volume 9, Pennsylvania Bulletin, page 4235. This maximum limit will continue to be referred to as $1,000 as it has no effect on the outcome of this issue. It would only be relevant if plaintiff's net work loss was greater than $988 and less than $1,000).

Section 206 of the No-fault Act provides that any Workmen's Compensation benefits paid must be deducted from the loss to determine "Net loss", the amount for which a No-fault carrier is liable. Wagner v. National Indemnity Co., 492 Pa. 154, 422 A.2d 1061 (1980). The Allegheny County Common Pleas Court held that Section 206 of the No-fault Act provides that Workmen's Compensation bene-

fits shall be subtracted from the victim's loss of income in calculating the work loss benefits to which the victim is entitled under the No-fault Act. Maxwell v. Allstate Insurance Company, 12 D. & C. 3d 78 (1979). It is the net loss that is limited to the monthly maximum work loss limit.

Brunelli v. Farelly Bros., 266 Pa. Super. 23, 402 A.2d 1058 (1979) indicates that the effect of the No-fault provision is that the Workmen's Compensation insurer must pay all that it is required to pay under the provisions of the Workmen's Compensation statute before the No-fault insurer's financial obligation begins to accrue. This leads to the conclusion that the $1,000.00 maximum limit set forth in Section 202 (b)(1)(A) of the No-fault Act is a limit on recovery by the plaintiff from his own insurance carrier and not a limit on total recovery.

Dictum in Turner v. Southeastern Pennsylvania Transportation Authority, 256 Pa. Super. 43, 389 A.2d 591 (1978) says that Section 206 providing that Workmen's Compensation benefits shall be subtracted from loss in calculating net loss for purposes of the No-fault Motor Vehicle Insurance Act, applies only if the employee was injured while using his own car or that of a third party in the course of conducting his employer's business; and that such provision does not apply where the employee is driving the employer's vehicle. We do not agree with that dictum and since it is just that, we are not bound by it. In a later decision by the Superior Court, Brunelli v. Farelly Bros., supra at 1061 in Footnote 6, the court said:

". . . although the basic decision in Turner was correct, the dictum in Turner was incorrect insofar as it indicated that No-fault Section 206(a) (providing for subtraction of Workmen's Compensation benefits from 'loss' in calculating 'net loss') did not

apply when an employee was driving the employer's car."

The parties have agreed by stipulation that if defendant is liable to plaintiff for interest, interest would begin to accrue on May 28, 1981 as the 30 day period set forth in the statute expired on that date.

If No-fault benefits are not paid within 30 days after the receipt of reasonable proof of the fact and amount of loss, 18 percent interest is owed on the payments regardless of "good faith" of the insurer or "reasonable cause" for the delay. 40 P.S. § 1009.106, § 1009.106(a)(1). Hayes v. Erie Insurance Exchange, 493 Pa. 150, 425 A.2d 419 (1981).

Defendant is therefore liable to plaintiff for interest at an annual rate of 18 percent beginning May 28, 1981.

The final issue in this case is the question of legal fees for either side. Both sides have claimed legal fees, but clearly, the defendant is not entitled to legal fees as there is no showing that the claim or any significant part thereof, is fraudulent or so excessive as to have no reasonable foundation which is a requirement under Section 107(2) of the Act if the insurer is to be entitled to counsel fees.

A different rule applies when we come to attorneys' fees on behalf of plaintiff. The pertinent portions of Section 107 are as follows:

"(1) If any overdue No-fault benefits are paid by the obligor after receipt by the obligor of notice of representations of a claimant in connection with a claim or action for the payment of No-fault benefits, a reasonable attorney's fee (based on actual time expended) shall be paid by the obligor to such attorney. No part of the attorney's fee for representing the claimant in connection with such claim or action for No-fault benefits shall be charged or de-

ducted from benefits otherwise due to such claimant and no part of such benefits may be applied to such fee.

• • •

"(3) If, in any action by a claimant to recover No-fault benefits from an obligor, the court determines that the obligor has denied the claim or any significant part thereof without reasonable foundation, the court may award the claimant's attorney a reasonable fee based upon actual time expended."

This issue cannot be disposed of by a motion for summary judgment. Hayes v. Erie Insurance Exchange, supra, stated that . . . insurer was not liable for counsel fees (under 40 P. S. § 1009.107) since its arguments were reasonable and it was not shown to have acted in bad faith. This case indicates that defendant's good faith or lack thereof is a factual issue that must be determined.

Plaintiff is entitled to recover attorney's fees only if it is found that defendant acted unreasonably and in bad faith under the circumstances.

## CONCLUSION

1. Plaintiff is entitled, as a matter of law, to recover $634.12 per month for 12 months from defendant, the $1,000 monthly limit under Section 202b(1)(A) of the No-fault Act being a limit of the liability of defendant.

2. As a matter of law, plaintiff is entitled to interest at the rate of 18 percent per annum on the overdue, unpaid proceeds as set forth in Section 106(a)(2) of the No-fault Act.

3. Plaintiff is entitled to recover attorney's fees under Section 107 of the No-fault Act only if it is determined that defendant acted unreasonably and in bad faith.

4. Defendant is not entitled to recover attorney's fees under Section 107(2) of the No-fault Act as plaintiff's claim was neither fraudulent nor excessive.

## ORDER

Now, August 24, 1982, partial summary judgment is entered in favor of plaintiff as follows:

1. Plaintiff is awarded the sum of $7,609.44 together with interest at the rate of 18 percent per annum from May 28, 1981.

2. Defendant's claim for attorney's fees is dismissed.

3. The matter of attorney's fees for the plaintiff shall be set down for hearing.

4. Costs on defendant.