Jesse Jason YODER and Gladys Yoder, husband and wife, individually and as parents and natural guardian of Naomi Yoder, a minor et al., Plaintiffs,

v.

Wayne E. DRESSLER and Denise L. Dressler, Defendants.

Civ. A. No. 79–0480.

United States District Court, M. D. Pennsylvania.

Jan. 7, 1981.

Michael Yanoff, John T. Dooley, Lansdale, Pa., for plaintiffs.

Delano M. Lantz, Mary Jane Forbes, McNees, Wallace & Nurick, Harrisburg, Pa., for defendants.

## MEMORANDUM

RAMBO, District Judge.

Before the court are cross motions for summary judgment which necessitate the resolution of a conflict of law. Plaintiffs, residents of Delaware, were involved in a motor vehicle collision on April 24, 1977 in Juniata County, Pennsylvania. Denise L. Dressler, a Pennsylvania resident, was the driver of the other vehicle involved in the accident. Robert and Joseph Yoder died as a result of injuries from the crash. Jesse, Gladys and Naomi Yoder were injured. The Yoders were insured under a policy with Nationwide Mutual Insurance Company (Nationwide). Nationwide paid first party no-fault benefits to the Yoders.

Erie Insurance Exchange (Erie) carried the Dressler motor vehicle insurance. On June 27, 1979 Erie settled claims made by the estates of Robert and Joseph Yoder. Subsequently, Erie was notified by Nationwide, in letters dated August 12, 1977 and March 3, 1978, that the latter expected reimbursement for the no-fault benefits paid to the Yoders. In February of 1979 Jesse and Gladys Yoder settled the remaining

claims of the family against Denise Dressler. Three months later this lawsuit was initiated in the Yoders' names to assert Nationwide's claim for payments it made to the Yoders covering medical, funeral and burial expenses.

The parties do not dispute that, under the Delaware law applicable at the time of the accident, Nationwide had the right to bring suit to recover the expenses at issue. It is also undisputed that Pennsylvania's No-Fault Motor Vehicle Insurance Act [1] prohibits subrogation for amounts paid by the no-fault carrier to its insured as first-party benefits. 40 P.S. § 1009.111. There is no agreement on whether Delaware or Pennsylvania law governs this issue. The court finds that Pennsylvania law controls the issue of subrogation, and that subrogation for the amounts claimed is prohibited by Pennsylvania law. It will, therefore, grant summary judgment in favor of the defendants for the reasons which follow.

A federal court in a diversity action is required to apply the conflict of law rules of the forum state. *Klaxon Co. v. Sentor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Pennsylvania has by statute directed which state law should determine the potential existence of liability when a lawsuit arises out of the operation of a motor vehicle in the Commonwealth. The No-Fault Motor Vehicle Insurance Act contains a section governing motor vehicles in interstate travel. 40 P.S. § 1009.110. A sub-section of that section provides:

(c) Applicable law.—

(1) The basic loss benefits available to any victim or to any survivor of a deceased victim shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance in effect in the state of domicile of the victim on the date when the motor vehicle accident resulting in injury occurs. If there is no such state no-fault plan in effect or if the victim is not domiciled in any state, then basic loss benefits available to any victim shall be determined pursuant to the pro-

visions of the state no-fault plan for motor vehicle insurance, if any, in effect in the state in which the accident resulting in injury occurs.

(2) The right of a victim or of a survivor of a deceased victim to sue in tort shall be determined by the law of the state of domicile of such victim. If a victim is not domiciled in a state, such right to sue shall be determined by the law of the state in which the accident resulting in injury or damage to property occurs.

First, it must be noted that an out-of-state victim's right to sue in tort for motor vehicle injuries inflicted in Pennsylvania is determined by the law of his state of domicile without regard to whether that state has a no-fault plan. The Yoders' right to sue a tortfeasor is controlled by Delaware law. Under the law of their home state they could not present evidence and recover the special damages which are the subject of this lawsuit. 21 Del.Code § 2118(g).

The question of which state law governs the payment of basic loss benefits, the claim asserted in the case *sub judice*, must be answered by reference to the type of motor vehicle insurance plan in existence in the victim's state of domicile. It is not the title or name of the foreign state's plan that determines whether it is a no-fault plan under Pennsylvania law. The Commonwealth adopted regulations in 1975 which specify the components that a foreign state's no-fault act must contain in order to be considered a no-fault plan for purposes of applying Pennsylvania law. The regulations direct:

(2) A 'state no-fault plan' is defined to be a plan which contains the following elements:

(i) compulsory or mandatory automobile insurance,

(ii) first party benefits, and

(iii) a restriction on the right to bring action for noneconomic detriment, *or a relevant change in the evidentiary rules of practice and proof with respect to these actions.* [Empha-

---

1. Act of July 19, 1974, P.L. 489, No. 176, Art. I, § 101, 40 P.S. § 1009.01 *et seq.*

sis supplied.] 31 Pa.Code §§ 66.-41(b)(2).

The Delaware no-fault motor vehicle statute in effect in April of 1977 included provisions for compulsory automobile insurance and for first party benefits. It did not restrict the victim's right to bring an action for non-economic detriment. 21 Del.Code § 2118.[2] It also directed that:

> Any person eligible for benefits ... is precluded from pleading or introducing into evidence in an action for damages against a tort-feasor those damages for which compensation is available. 21 Del. Code § 2118(g).

Delaware unquestionably made a *change* "in the evidentiary rules of practice and proof" for lawsuits arising out of motor vehicle accidents. However, the Pennsylvania regulation requires not just a change, but a "relevant change." It is silent as to the context for determining relevancy, and this court has found no Pennsylvania case law which addresses the issue.

The quoted regulation listing the elements of a no-fault act describes in general terms a no-fault plan similar to that of Pennsylvania. When the Commonwealth's no-fault act was passed, the legislature wanted to develop a statewide motor vehicle insurance system which assured victims payment of certain basic loss benefits and eliminated the need for lawsuits except in cases of serious injury. 40 P.S. § 1009.102. It addressed the first of these objectives by requiring compulsory automobile insurance and the payment of first party benefits. To decrease the volume of lawsuits the legislature restricted the class of potential plaintiffs to those suffering certain statutorily described serious injuries. Even those able to bring suit are precluded from recovering some categories of damage. Neither the victim or his no-fault carrier may recover the special damages paid as basic loss benefit. The court concludes that a rele-

vant evidentiary change would be one which reduced the incentive to bring suit, as the Pennsylvania statute has.

The evidentiary change in the Delaware statute effective in April of 1977 did not alter the ultimate tort liability for a motor vehicle accident. It merely split the existing cause of action, permitting the insurance carrier to sue for the special damages it had paid the victim, and forbidding the victim to recover them. However, the suit of the victim and insurer could be combined for trial. Thus, the liability of the tort-feasor and the evidence considered by the jury remained the same as under pre-no-fault law. *DeVincentis v. Maryland Casualty Co.*, Del.Super., 325 A.2d 610 (1974). The structure of the Delaware law would have had little, if any, impact on the number of motor vehicle related legal actions, since plaintiffs and their insurers were entitled to the entire pre-no-fault damages. Measured against the objectives of the Pennsylvania No-Fault Act, this minor evidentiary change is not relevant.

The Delaware statute was not a "no-fault" plan, according to Pennsylvania guidelines, as it did not contain either of the elements of subsection iii of the applicable regulation. That means that under the Pennsylvania statute's choice of law section governing payment of basic loss benefits, the Yoders were entitled to the basic loss benefits provided in Pennsylvania's No-Fault Act. 40 P.S. § 1009.110(c)(1). Therefore, Nationwide is an "obligor" as that term is defined in the Pennsylvania statute.[3] 40 P.S. § 1009.103. Since Nationwide is an obligor, it is subject to the prohibition against subrogation claims for basic loss benefits. As previously stated, the Yoders themselves could not sue for the medical, burial and funeral expenses under either the Pennsylvania or Delaware law. Thus, the claims asserted here are invalid as a matter of law, and defendants are entitled to judgment in their favor.

---

2. The Delaware Act has been amended since the date of the collision underlying this lawsuit. The holding of this action will not necessarily apply to similar factual situations arising after June of 1977.

3. The definition given: " 'Obligor' means an insurer, self-insurer, or obligated government providing no-fault benefits in accordance with this act."