## St. Paul Fire & Marine Insurance Co. v. Liberty Mutual Insurance Co.

*David C. Miller,* for plaintiff.

*Daniel K. Deardorff,* for defendant Liberty Mutual Insurance Co. and Alloy Rod Division of Chemetron Corp.

*Stephen M. Greecher,* for defendant Nora Humphreys.

*Michael A. Ranck,* for defendant Pennsylvania Assigned Claims Plan.

BAYLEY, *J.,* September 20, 1984—

## FACTUAL BACKGROUND

Nora Humphreys is a resident of Batesville, Arkansas, and at all times relevant to this proceeding was employed as a truck driver and working in the course of that employment for the Rising Fast Trucking Company, also of Batesville. On March 8, 1982, Humphreys was delivering goods on the property of Alloy Rod Division of Chemetron Corp. in Hanover, York County, Pa. While the trailer of her tractor trailer unit was being unloaded at the Alloy Rod facility, Humphreys attempted to leave the unit. With one foot on the trailer ladder, and the other foot on the parking lot, she slipped and fell, receiving some severe injuries to her leg and other

parts of her body. Subsequent to the accident Humphreys was placed on workmen's compensation and received wage loss and medical benefits from St. Paul Fire and Marine Insurance Company which was the workmen's compensation carrier for Rising Fast Trucking Co. St. Paul conducts business and has an office located in Camp Hill, Cumberland County, Pa.

As a result of the payment by St. Paul of workmen's compensation benefits to Humphreys, it has demanded reimbursement from the Liberty Mutual Insurance Company, the insurance carrier for Alloy Rod. Liberty Mutual conducts business and has an office in Mechanicsburg, Cumberland County, Pa.

Liberty Mutual has denied liability to St. Paul and raised the defense of the Pennsylvania No-fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, 40 P.S. §1009.101 et seq. It avers that the Pennsylvania No-fault Act removes any subrogation right of petitioner St. Paul to the first $15,000 of work loss benefits that may be paid to Humphreys. Liberty Mutual maintains that the "alighting from" terminology found in the definition of the terms "maintenance or use," in §1009.103 of the act, invokes no-fault coverage, and if no-fault coverage is applicable, St. Paul has no right to subrogation pursuant to §1009.111 of the act.

St Paul has filed a petition for a declaratory judgment pursuant to 42 Pa. C.S. §7531 et seq. Service of the petition has been made against respondent Liberty Mutual Insurance at its Mechanicsburg, Cumberland County office. Service has also been made on the other respondents and appearances entered on their behalf.

Cross-motions for summary judgment have been filed based upon the aforesaid facts, which have been stipulated to by the parties.

## DISCUSSION

A Pennsylvania court may, in a proceeding where declaratory relief is sought, render a declaratory judgment where the judgment or decree will terminate the controversy or remove an uncertainty. 42 Pa. C.S. §7536. Under the act, any person whose rights, status, or other legal relations are affected by a statute, may have determined any question of construction arising under the statute and obtain a declaration of his rights, status or other legal relations to it. 42 Pa. C.S. §7533. We have subject matter jurisdiction as a result of petitioner St. Paul and respondent Liberty Mutual doing business and having offices located in Cumberland County, Pa. All parties in interest have been joined, served, entered an appearance and been heard in this case. Since all requirements under the act have been met we accept jurisdiction as a matter of judicial discretion. Harleysville Mut. Ins. Co. v. Philadelphia Transp. Co., 435 Pa. 316, 255 A.2d 516 (1969).

If the Pennsylvania No-fault Motor Vehicle Insurance Act applies to this accident, Nora Humphreys, even though an out of state domiciliary, is entitled to basic loss benefits under the Pennsylvania Act. 40 P.S. §1009.110(c). Arkansas, the state of her domicile, does not require automobile insurance or restrict the right to bring a tort action for non-economic detriment in motor vehicle accident cases. Ark. Statutes §66.4018. For a state insurance plan to be considered no-fault such that it supersedes the Pennsylvania No-fault Statute, it must require automobile insurance, provide first party benefits and restrict tort liability for non-economic detriment or relevantly change the evidentiary rules relating to tort liability. 31 Pa. Code §66.41(b)(2). We conclude that the Arkansas Insurance Statute is not a no-

fault plan as defined by Pennsylvania law and regulations and accordingly Pennsylvania No-fault basic loss benefits are available to Nora Humphreys if her accident falls within the Pennsylvania Motor Vehicle No-fault Insurance Act.

The act defines "victim" as follows:

"Victim means an individual who suffers injury arising out of the maintenance or use of a motor vehicle. 40 Pa. C.S. § 1009.103.

The phrase "maintenance or use of a motor vehicle" is defined as:

"Maintenance or use of a motor vehicle means maintenance or use of a motor vehicle as a vehicle, including, incident to its maintenance or use as a vehicle, occupying, entering into, or *alighting from it*. Maintenance or use of a motor vehicle does not include:

(A) Conduct within the course of a business of repairing, servicing or otherwise maintaining motor vehicles unless the conduct occurs off the business premises; or

(B) Conduct in the course of loading or unloading a motor vehicle unless the conduct occurs while occupying, entering into or alighting from it. (Emphasis added).

In Tyler v. Insurance Company of North America, 311 Pa. Super. 25, 457 A.2d 95 (1983), plaintiff had stepped off of a bus and taken three or four steps toward the shoulder of the highway at which time she was struck by a motorcycle. The court held that plaintiff was a "victim" not only because she was struck by the motorcycle, but also because she was alighting from the bus at the time of the accident. The court found that a person who is alighting from a vehicle continues to occupy the vehicle and to be an occupant "until he severs all connections with it." The court defined the point of severance in that

case as the time when the person becomes highway oriented rather than vehicle oriented.

There is no question that Humphreys fell while alighting from her truck at a time when she had not severed all her connection with it. She was still in physical contact with the vehicle and in the process of making her last step from the vehicle to the ground. As such she was alighting from it as the phrase is used in the act's definition of "maintenance or use of a motor vehicle."

The facts of this case can be distinguished from Dull v. Employers Mut. Cas. Co., 278 Pa. Super. 569, 420 A.2d 688 (1980). In Dull, appellant drove his automobile with a boat attached to the roof, to a lake. Upon arriving he parked his car, got out, and began to remove the boat from the car roof. As he was standing behind the car unloading the boat he fell because of the condition of the land and sustained injuries. The Superior Court held that the appellant did not meet the statutory definition of a "victim" because he ". . . had already gotten out of his car, he was not in fact alighting from it when he fell." The court construed the words "alighting from" according to their common meaning and cited Webster's Third New International Dictionary 609 (unabridged 1967) which defines the word "alight" as "to spring down, get down, or descend (as . . . from a vehicle) . . ."

St. Paul further suggests that Humphrey's accident was not causally connected with the use of the truck because it did not "arise out of" the use of the tractor trailer unit as a motor vehicle. It maintains, correctly, that "no-fault" was not intended to be a panacea for all injuries that could be traced to a motor vehicle no matter how far removed from the actual operation of such a vehicle. Monaghan v. Pennsylvania Manufacturers Association Insurance Co.,

301 Pa. Super. 419, 447 A.2d 1037 (1982). It cites Camacho v. Nationwide Insurance Company, 314 Pa. Super. 21, 460 A.2d 353 (1983), for the position that there must be a degree of nexus between an injury and a vehicle to bring an injury within the coverage of the No-fault Act. Camacho noted:

"The Act must be read as a whole and not each section thereof individually to determine its scope. It is clear that this was never intended to be a general liability insurance which would cover all injuries, no matter how remotely connected with the use or maintenance of a motor vehicle, but is intended to cover motor vehicle accidents. The economics of the Act are completely destroyed by any other interpretation.

In effect, petitioner is suggesting that no-fault benefits are unavailable unless the vehicle is moving or is involved in a collision which causes the harm. This "accident" terminology comes from Camacho. However, an examination of the facts of that case reveal that it involved an explosive device which was thrown into a moving motor vehicle while it was being operated by appellant. While still moving he tried to throw the device back out of the vehicle but it exploded in his hand. The Superior Court held that no-fault coverage was not available. This holding was based upon the fact that the injury arose from an international tort and not the maintenance and use of a motor vehicle. The decision in Camacho was similar to this court's decision in Rhoads v. Heberlig, Aff'd. 306 Pa. Super. 35, 451 A.2d 1378 (1982). In Rhoads, the occupant was shot while seated in a parked vehicle. The court held that the No-fault Act was not applicable because the injury arose out of an intentional tort inflicted upon an occupant and not out of the maintenance and use of the motor vehicle.

In Spisak, et al. v. Nationwide Mutual Insurance Co., the Superior Court, in an opinion filed on July 13, 1984, (Slip opinion No. 1362 and 1363 Pittsburgh 1982), specifically rejected the view that no-fault benefits are available only to victims of accidents in which a vehicle is moving and involved in a collision of some type which causes harm. The court held that the real issue in these cases "was the *instrumentality used to cause* the injury" and that the act's protections are applicable if the injury was "*causally related* to the use of a motor vehicle." In Spisak, the court held that no-fault coverage applied to provide death benefits to decedent's estate where decedent and his companion died as a result of carbon monoxide poisoning from the exhaust fumes of a parked automobile in which the motor was running while they were engaged in love-making in the back seat. The court noted that even though there was no accident in the traditional sense, the automobile was the instrumentality which caused the harm.

In the present case the truck was the instrumentality which Humphrey's fell off of while she was alighting from it. The unambiguous language of §1009.103 of the No-fault Act, which defines the phrase maintenance or use of a motor vehicle as, among other things, "alighting from it" and the reasoning of Spisak, support the conclusion that Humphreys suffered her injury as a result of her physical contact with her truck, i.e., the instrumentality. Her accident was causally related to her use of the truck as she alighted from it.

If the legislature had intended to limit coverage under the No-fault Act to only those cases where a vehicle is moving and involved in a collision with another vehicle, object or person, it could have limited such coverage accordingly. In fact, Section

1009.103 provides two specifically delineated limitations. But it also provides that coverage does arise when an injury occurs as a result of "alighting" from a vehicle. The public policy arguments opposing coverage in this case, suggested by respondent, Pennsylvania Assigned Claims Plan, would apply with equal force to the facts upon which the Superior Court decided Spisak. We do not discount the merit of the plan's position since Camacho has held that the No-fault Act does not create a system of general liability insurance. However, given the present wording of § 1009.103, these arguments must be addressed to the legislature and not the courts.

In Vespaziani v. Insana, 501 Pa. 612, 462 A.2d 669 (1983), the Supreme Court in determining whether the No-fault Act's partial abolition of tort liability for injury arising from a motor vehicle accident has modified the employer's and its insurance carrier's claim for subrogation under the Workmen's Compensation Act, held:

"[T]he subrogation claim of the workmen's compensation carrier is negated to the extent of those benefits paid by the workmen's compensation carrier which constitute a contribution toward the compensation of the first $15,000 of work loss sustained. Beyond the workmen's compensation carrier's contribution toward this first $15,000 of compensation, the subrogation claim for recovery of benefits payable has not been affected by the No-Fault Act."

This rule applies even though Humphreys, an Arkansas domiciliary, retains her home state tort remedies and is not restricted by Pennsylvania No-fault tort immunity. Yoder v. Dressler, 505 F. Supp. 111 (1981).

## ORDER OF COURT

And now, this September 20, 1984, the motion for summary judgment by Liberty Mutual Insurance Co., Alloy Rod Division of Chemetron Corp., and Nora Humphreys, is granted.

It is ordered and adjudged that the rights of the parties are as follows:

1. Nora Humphreys is entitled to recover benefits pursuant to the Pennsylvania No-fault Motor Vehicle Insurance Act as a result of injuries she received while alighting from a truck which arose out of the maintenance and use of a motor vehicle in Hanover, Pennsylvania, on March 8, 1982.

2. The subrogation claim of St. Paul Fire and Marine Insurance Co., is negated to the extent of those benefits paid by the workmen's compensation carrier which constitute a contribution toward the compensation of the first $15,000 of work loss sustained by Nora Humphreys. Beyond the workmen's compensation carrier's contribution toward this first $15,000 of compensation, the subrogation claim for recovery of benefits payable is not affected by the No-fault Act.