402 A.2d 1058

**Fred A. BRUNELLI and Fred A. Brunelli, to the use and benefit of CNA/Insurance**

v.

**FARELLY BROTHERS and Luis Aviles.**

**Appeal of CNA/INSURANCE.**

Superior Court of Pennsylvania.

Argued Dec. 6, 1977.

Decided May 4, 1979.

William F. Sweeney, Philadelphia, for appellant.

Michael A. Paul, Upper Darby, for appellee Brunelli.

John J. Baulis, Philadelphia, for appellees Farelly Brothers and Aviles.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

On August 6, 1975, Frederick A. Brunelli, an employee of Cobb and Lawless, was injured in a collision with an automobile driven by Luis Aviles, an employee of Farelly Brothers. At the time of the accident, Mr. Brunelli was operating a motor vehicle furnished by his employer, within the scope of

his employment. A complaint in trespass was filed on August 27, 1976 by Fred A. Brunelli against Farelly Brothers and Luis Aviles. On December 14, 1976, CNA Insurance Company, the workmen's compensation insurer for Cobb and Lawless, filed a Petition to Intervene as Use Plaintiff, alleging subrogation rights (to the extent of workmen's compensation paid and payable) to any recovery by plaintiff from the defendants. The lower court denied the petition by order dated April 28, 1977, and CNA appealed to our Court, arguing that the lower court improperly ruled that the Pennsylvania No-fault Motor Vehicle Insurance Act[1] implicitly repealed the subrogation provision of the Pennsylvania Workmen's Compensation Act,[2] and also that the lower court improperly determined that the No-fault statute prohibits subrogation by a workmen's compensation carrier for money paid to an employee injured in an automobile accident while acting within the scope of his employment. Although the No-fault statute does not specifically prohibit subrogation by a workmen's compensation insurer, a careful analysis of that convoluted, ungrammatical statute leads us to the conclusion that the workmen's compensation insurer is not subrogated, at least under the facts of the case before us, to any recovery by the injured employee.

Under No-fault § 111(b), the no-fault insurer (or "obligor", to use the term employed in the Act) must pay the injured insured (the employee Brunelli in this case) "basic loss benefits", regardless of who was responsible for causing the accident. "Basic loss benefits", according to No-fault § 103, are paid to a victim to compensate him for his "net loss". According to No-fault § 103, "net loss" is calculated by subtracting "benefits" and "advantages" (terms which are not specifically defined in No-fault) from "loss". "Loss" is defined in No-fault § 103 as "accrued economic detriment resulting from injury arising out of the maintenance or use

1. Act of July 19, 1974, P.L. 489, No. 176, Art. I, § 101, 40 P.S. § 1009.101 et seq. (Supp., 1977–78).

2. Act of June 2, 1915, P.L. 736, No. 338, as amended, 77 P.S. § 1 et seq.

of a motor vehicle consisting of, and limited to, allowable expense, work loss, replacement services loss, and survivor's loss". (The latter terms are defined in No-fault § 103).[3] Although "benefits" and "advantages" are not defined in No-fault's definition section, section 206(a) of the Act provides that (except when certain "assigned claims" are involved) all benefits and advantages which an individual receives or is entitled to receive from *workmen's compensation* shall be subtracted from "loss" and in calculating "net

**3.** " 'Allowable expense' means reasonable charges incurred for, or the reasonable value of (where no charges are incurred), reasonably needed and used products, services, and accommodations for:

    (A) professional medical treatment and care;

    (B) emergency health services;

    (C) medical and vocational rehabilitation services;

    (D) expenses directly related to the funeral, burial, cremation or other form of disposition of the remains of a deceased victim, not to exceed one thousand five hundred dollars ($1,500); and

The term does not include that portion of a charge for a room in a hospital, clinic, convalescent, or nursing home, or any other institution engaged in providing nursing care and related services, in excess of a reasonable and customary charge for semiprivate accommodations, unless more intensive care is medically required; or any amount includable in work loss, replacement services loss, or survivor's loss."

" 'Work loss' means:

    (A) loss of gross income of a victim, as calculated pursuant to the provisions of section 205 of this act; and

    (B) reasonable expenses of a victim for hiring a substitute to perform self-employment services, thereby mitigating loss of income, or for hiring special help, thereby enabling a victim to work and mitigate loss of income."

" 'Replacement services loss' means expenses reasonably incurred in obtaining ordinary and necessary services in lieu of those the victim would have performed, not for income, but for the benefit of himself or his family, if he had not been injured."

" 'Survivor's loss' means the:

    (A) loss of income of a deceased victim which would probably have been contributed to a survivor or survivors, if such victim had not sustained the fatal injury; and

    (B) expenses reasonably incurred by a survivor or survivors, after a victim's death resulting from injury, in obtaining ordinary and necessary services in lieu of those which the victim would have performed, not for income, but for their benefit, if he had not sustained the fatal injury, reduced by expenses which the survivor or survivors would probably have incurred but avoided by reason of the victim's death resulting from injury."

loss".[4] The effect of the foregoing sections is that the workmen's compensation insurer must pay all that it is required to pay under the provisions of the workmen's compensation statute before the no-fault insurer's financial obligations begin to accrue.[5]

As noted previously, the no-fault insurer is obligated to pay "basic loss benefits" to the victim. Under No-fault § 301, the tortfeasor's tort liability for economic damage is *abolished*, except for amounts in excess of money paid to the victim as "basic loss benefits". (Section 301 contains other exceptions not applicable here). The victim may recover from the tortfeasor for amounts in excess of the "basic loss benefits", and if the victim's no-fault insurance policy provides for "added loss benefits" (benefits in excess of "basic loss benefits"), under No-fault § 111(a)(2) the no-fault insurer will be subrogated to the victim's right to recover from the tort-feasor, but only for economic damages which *exceed* the "basic loss benefits" amounts. In other words, the no-fault insurer must pay "basic loss benefits" to the victim, and perhaps additional benefits (if specified in the contract of insurance), but may recover from the tortfeasor only for amounts paid to the victim in excess of "basic loss benefits".

■■ We turn now to the question of whether the workmen's compensation insurer may recover for amounts paid to the victim under the terms of the Pennsylvania Workmen's

4. The workmen's compensation benefits would *not* be subtracted from "loss" to calculate "net loss" if the workmen's compensation statute specifically provided that workmen's compensation benefits were to be "excess" or "secondary" to no-fault benefits. No-fault § 206(a).

5. It should be noted, however, that No-fault § 106(a)(3) provides that no-fault benefits shall be paid without deduction for the benefits or advantages which are to be subtracted from "loss" in calculating "net loss" if such benefits or advantages have not been paid or provided to the claimant prior to the date the no-fault benefits are overdue or the no-fault benefits claim is paid. Section 106(a)(3) provides that in such event the no-fault insurer may recover reimbursement from the party, in this case the workmen's compensation carrier, who is obligated to pay, or may recover from the claimant who has been paid by the party (the workmen's compensation carrier) after the no-fault carrier has paid the claimant.

Compensation Act. The Pennsylvania Workmen's Compensation Act provides, 77 P.S. § 671, that "[w]here the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer . . . ." Since No-fault has abolished the tort liability of a tortfeasor involved in an automobile accident except for amounts in excess of "basic loss benefits", and since workmen's compensation benefits are not amounts in excess of "basic loss benefits" (as determined earlier in this opinion), neither the employee-victim nor the workmen's compensation insurer, his would-be subrogee, has a cause of action against the third party tortfeasor for the sum paid or payable to the employee as workmen's compensation benefits.[6]

The order of the lower court denying the workmen's compensation insurer permission to intervene as use plaintiff is affirmed.

SPAETH, J., concurs in the result.

JACOBS, and WATKINS, former President Judges, and HOFFMAN, J., did not participate in the consideration or decision of this case.

6. A word of caution is in order. The Pennsylvania Workmen's Compensation Act, 77 P.S. § 481, provides that the liability of an *employer* to an employee shall be controlled exclusively by that act. The Workmen's Compensation Act does not affect an employee's cause of action against a *third party* tortfeasor, except for prohibiting the third party from recovering contribution from the employer for damages which the third party is required to pay to the employee-victim (77 P.S. § 481). No-fault applies to an action between the employee and the third party. *Turner v. Southeastern Pennsylvania Transportation Authority,* 256 Pa.Super. 43, 389 A.2d 591 (1978), did not contemplate the situation which now confronts us. Although the basic decision in *Turner* was correct, the dictum in *Turner* was incorrect insofar as it indicated that No-fault § 206(a) (providing for subtraction of workmen's compensation benefits from "loss" in calculating "net loss") did not apply when an employee was driving the employer's car.