462 A.2d 669

Tony VESPAZIANI and Viola Vespaziani, his wife

v.

Pete INSANA, individually and t/d/b/a Pete Insana Auto Body Repair and Towing, and Richard Insana.

Appeal of TRANSPORT INSURANCE COMPANY.

Supreme Court of Pennsylvania.

Argued March 8, 1983.

Decided July 11, 1983.

Joseph F. Grochmal, Roy F. Walters, Jr., Fried, Kane, Walters & Zuschlag, David S. Shrager, Pittsburgh, for appellant.

Daniel M. Berger, Pittsburgh, for Tony Vespaziani, et ux.

Robert L. Ceisler, Washington, for Pete Insana, etc.

Fred C. Trenor, Louis C. Long, Meyer, Darragh, Buckler, Bebenek & Eck, Pittsburgh, for amicus curiae Westmoreland Cas. Co.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

Plaintiff Vespaziani sustained injuries in a motor vehicle accident occurring in the course of his employment by East-

ern Express, Inc. Under the Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, § 101 *et seq., as amended,* 77 P.S. §§ 1 *et seq.,* Eastern's insurance carrier, Transport Insurance Company (herein Transport), has paid to Vespaziani over $31,000 in workmen's compensation "work loss" benefits. In addition, Vespaziani instituted an action in trespass against Pete Insana individually and Pete Insana Auto Body Repair and Towing and Richard Insana under the provisions of the No-Fault Motor Vehicle Insurance Act, Act of July 19, 1974, P.L. 489, No. 176, § 101 *et seq.,* 40 P.S. § 1009.101 *et seq.* Transport petitioned for leave to intervene as use-plaintiff, based on its claim to subrogation under the Workmen's Compensation Act, Section 319, 77 P.S. § 671. The Court of Common Pleas of Washington County denied Transport's petition, whereupon Transport appealed to the Superior Court, which affirmed, *Vespaziani v. Insana,* 293 Pa.Superior Ct. 117, 437 A.2d 1234 (1981). We granted allocatur to address the question of the effect of the No-Fault Motor Vehicle Insurance Act on the employer's claim to subrogation under the Workmen's Compensation Act.

The Pennsylvania Workmen's Compensation Act, Section 319, provides for an employer's, hence the employer's insurer's, claim to subrogation to the extent of compensation payable. Section 319 provides in pertinent part:

> Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe, his personal representative, his estate or his dependents, against such third party to the extent of the compensation payable under this article by the employer.

77 P.S. § 671.

Were this not a vehicular negligence case, Transport could assert its statutory subrogation interest to recover from a third party the amount of its liability for workmen's compensation benefits. However, this case presents the question whether the No-Fault Act's partial abolition of tort liability for injury arising from a motor vehicle accident has modified the employer's claim of subrogation under the Workmen's Compensation Act.

In order to address this question, a review of the basic organization of the pertinent articles of the No-Fault Act is required. Article II addresses the obligation of a no-fault "obligor," i.e., insurer, under the Act. Under Article II, the no-fault obligor is required to provide "basic loss benefits" without any inquiry regarding fault. Basic loss benefits are defined as benefits payable for the "net loss" sustained, 40 P.S. § 1009.103. Section 206(a) of Article II concerns the calculation of "net loss." Under this section, workmen's compensation benefits are to be deducted from the victim's "loss" in determining the amount payable by the no-fault obligor:

> [A]ll benefits or advantages ... that an individual receives or is entitled to receive from social security ... *workmen's compensation,* any State-required temporary, nonoccupational disability insurance, and all other benefits..., shall be subtracted from loss in calculating *net loss.*

40 P.S. § 1009.206(a) (emphasis supplied). Thus, the rights of the insured to basic loss benefits from the no-fault obligor are controlled by these *net loss* provisions providing for payment of benefits from the *no-fault obligor* to compensate loss not covered by *primary* collateral sources, e.g. social security or workmen's compensation.

Article III of the No-Fault Act addresses tort liability, including that of third parties. Section 301(a)(4) enacts a partial abolition of tort liability but enumerates specific exceptions to such abolition:

> (a) Partial abolition.—Tort liability is abolished with respect to any injury that takes place in this State in accordance with the provisions of this act if such injury arises out of the maintenance or use of a motor vehicle, except that:
>
>  . . . .
>
> (4) A person remains liable for any *loss* which is not compensated because of any limitations in accordance with Section 202(a), (b), (c) or (d) of this Act [limits of mandatory payment by no-fault obligor, i.e. "basic loss benefits"].

40 P.S. § 1009.301(a)(4) (emphasis supplied). "Loss" under the Act is defined as "accrued economic detriment resulting from injury" 40 P.S. § 1009.103. The No-Fault Act compensates work loss to a maximum of $15,000. 40 P.S. § 1009.-202(b)(2). Accordingly, in a *non* scope-of-employment vehicular accident, a work loss in excess of $15,000 is recoverable from the tortfeasor with no recovery for the first $15,000.[1] Where, however, the injury occurs in the scope of employment, the first $15,000 of work loss suffered by the injured will be composed of both workmen's compensation benefits and no-fault benefits.

The No-Fault Act, in Section 206(a), coordinates workmen's compensation benefits with no-fault benefits, providing that no-fault benefits shall be paid to the injured for the "net loss" suffered beyond that compensated by the workmen's compensation benefits. Since the Workmen's Compensation Act provides, in the typical case, that sixty-six and two-thirds percent of the wages of the injured employee shall be compensated, § 306(a), 77 P.S. § 511 *et seq.*, the "net loss" typically will be the remaining thirty-three and one-third percent of the wages[2] of the injured employee. Therefore, by combining these benefits, the injured employee receives full compensation for his work loss: typically, sixty-six and two-thirds percent of the first $15,000 of that loss, i.e., $10,000, will be paid to the injured employee by the workmen's compensation carrier and thirty-three and one-third percent of that loss, i.e., $5,000 will be paid to the injured employee by the no-fault obligor.

Section 301(a)(4) of the No-Fault Act precludes recovery from a third party tortfeasor for the first $15,000 of work

**1.** Likewise no subrogation claim in the no-fault obligor exists as to payments constituting "basic loss benefits." 40 P.S. § 1009.111. Consistent with the abolition of tort liability for basic loss compensated by the no-fault obligor without regard to fault, the no-fault obligor enjoys a subrogation claim to recovery only in excess of basic loss benefits paid, typically, in a non-workmen's compensation case, via the additional security of "added loss benefits" contracted for at the option of the insured. 40 P.S. § 1009.207(a).

**2.** This compensation by the no-fault obligor will be adjusted for a tax saving deduction pursuant to Section 206(b) of the No-Fault Act.

loss suffered. The contribution by the workmen's compensation carrier to the first $15,000 of work loss, typically $10,000 is, therefore, compensation paid which cannot be recouped by the workmen's compensation carrier since there will be no recovery from the third party tortfeasor which represents this first $15,000.

These basic provisions of the No-Fault Act have been interpreted by the Superior Court so as to deny workmen's compensation carriers statutory subrogation to an employee's third-party tort recovery under the No-Fault Act, even with respect to contributions beyond the first $15,000 of work loss benefits. *Vespaziani v. Insana,* 293 Pa.Superior Ct. 117, 437 A.2d 1234 (1981); *Erie Insurance Exchange v. Fleagle,* 285 Pa.Superior Ct. 310, 427 A.2d 651 (1981); *Brunelli v. Farelly Brothers,* 266 Pa.Superior Ct. 23, 402 A.2d 1058 (1979). In so doing, Superior Court has relied upon Section 206(a) of the No-Fault Act, discussed *supra,* which was designed to prevent double recovery by coordinating collateral benefits and establishing workmen's compensation benefits as primary. In *Brunelli v. Farelly,* 266 Pa.Superior Ct. 23, 402 A.2d 1058 (1979), Superior Court analyzed the effect of Section 206(a) as follows:

> Since No-Fault has abolished the tort liability of a tortfeasor involved in an automobile accident except for amounts in excess of "basic loss benefits", and *since workmen's compensation benefits are not amounts in excess of "basic loss benefits"* [reference to § 206(a) ] ..., neither the employee-victim nor the workmen's compensation insurer, his would-be subrogee, has a cause of action against the third party tortfeasor for the sum paid or payable to the employee as workmen's compensation benefits.

*Id.,* 266 Pa.Superior Ct. at 28, 402 A.2d at 1061 (1979) (emphasis supplied); *Accord Vespaziani v. Insana, supra; Erie Insurance Exchange v. Fleagle, supra.* The conclusion that all workmen's compensation benefits payable are "not amounts in excess of basic loss benefits," and can never be recovered from a third party tortfeasor, arises from a misapplication of a portion of Article II of the No-Fault Act

intended to be employed in calculating the no-fault *obligor's* liability, rather than third party tortfeasor liability. Thus, the Superior Court's reliance on Section 206(a) is in error.

It will be recalled that Section 206(a) merely coordinates the respective obligations of the workmen's compensation carrier and the no-fault obligor by requiring the deduction of payable workmen's compensation benefits from gross work loss, resulting in "net loss" which is the liability of the no-fault obligor up to the limits of its obligation as set forth by the Act.[3] Section 301(a)(4) of the No-Fault Act, quoted *supra,* preserves the liability of the third party tortfeasor for loss which is not compensated by the no-fault obligor because of the $15,000 work loss limitation set forth in Section 202(b)(2).

Thus, in the usual case, absent workmen's compensation benefits, the no-fault obligor compensates work loss up to $15,000 and once the $15,000 limit is reached, recovery from the third party tortfeasor for work loss suffered beyond that $15,000 is the only remaining potential source of compensation. When, however, a scope-of-employment accident gives rise to workmen's compensation benefits, payments by the no-fault obligor typically will be reduced to one-third the rate of compensation in a non scope-of-employment accident.

A question that arises from this joint payment scheme is when third party liability begins. The act *might* be construed as requiring that only when *no-fault* benefits of

---

**3.** Citing Section 206(a)'s requirement that primary source benefits be subtracted from gross loss to derive net loss, Transport contends that payments by primary sources should be deemed to operate as a "credit" against the liability of the no-fault obligor, thereby reducing that obligation. Thus, according to Transport, if the injured suffered a work loss of $1200 a month, $800 of which was compensated by workmen's compensation, the no-fault obligor would be obligated to pay, not $400, but $200, bringing the injured's total recovery to an alleged $1,000 limitation on monthly payments. No provision of the Act supports this argument. The calculation mandated by Section 206(a) is merely designed to prevent double recovery, not relieve the no-fault obligor of its liability under the act. The reference to $1,000 in Section 202(b)(1)(A) is merely a base figure to which a fraction is to be applied in determining benefits in the absence of an agreement in writing of the measure of work loss, not an absolute limit on monthly no-fault work loss benefits.

$15,000 have been paid, does third party liability arise. However, and most importantly, the fortuity that the victim was injured while engaged in duties within the scope of employment at the time of the motor vehicle accident should not protect a third party from tort liability to a greater extent than the $15,000 abolition of tort liability applicable to a non scope-of-employment accident, for to do so would unduly restrict an employer's subrogation claim under the Workmen's Compensation Act.[4,5] There exists no indication of legislative intent that Section 301(a)(4) mandating third party liability for work loss beyond $15,000 is modified by Section 206(a) of the No-Fault Act, which merely coordinates benefits from multiple insurers, by requiring a calculation of "net loss."

Accordingly, we hold that the subrogation claim of the workmen's compensation carrier is negated to the extent of those benefits paid by the workmen's compensation carrier which constitute a contribution toward the compensation of

4. For example, in a scope-of-employment accident, if third party liability were deemed to commence under Section 301(a)(4), i.e., once there is a loss "not compensated" due to the limits of "basic loss benefits" set forth in Section 202(b), this result would follow: the workmen's compensation carrier and the no-fault obligor, in compensating a monthly wage loss of $1200, would be required to compensate the injured at the rate of $800 and $400 respectively until the no-fault obligor reached the limits of its obligation to compensate net loss, $15,000, at which point the no-fault obligor would discontinue payment and the injured would be deemed to have an out of pocket loss "which is *not compensated* because of [the] limitation [set forth in] § 202(b)." This would take almost three years and payment by the workmen's compensation carrier of benefits in excess of $30,000, resulting, in effect, in the abolition of tort liability, in this example, as to approximately $45,000 of loss suffered ($30,000 of workmen's compensation benefits and $15,000 of no-fault benefits). Absent a clear indication of legislative intent, we cannot impose such an undue restriction on the express grant of a subrogation claim in the Workmen's Compensation Act.

5. By way of dictum, we note an anomaly similar to that discussed in note 4, *supra*. Where an insured receives "added loss benefits," 40 P.S. § 1009.207(a), above and beyond the no-fault $15,000 "basic loss benefits" of Section 202(b), the *no-fault obligor* is expressly granted a claim of subrogation to the extent of any "added loss benefits" paid, 40 P.S. § 1009.111(a). An insured who receives "added loss benefits" *is compensated* beyond the $15,000 "basic loss benefits" and

the first $15,000 of work loss sustained. Beyond the workmen's compensation carrier's contribution toward this first $15,000 of compensation, the subrogation claim for recovery of benefits payable has not been affected by the No-Fault Act.

Reversed and remanded for proceedings consistent with this opinion.

will not have a "loss ... not compensated" for which the third party is to be liable under Section 301(a)(4). Thus, in that case, Section 301(a)(4)'s wording, "loss ... not compensated," might be viewed as further limiting third party liability. Such a limitation would conflict with the *no-fault obligor's* statutory subrogation claim for any "added loss benefits" paid, 40 P.S. § 1009.111(a).