**Eldridge LEE, et al., Appellant,**

v.

**DISTRICT OF COLUMBIA, Appellee.**

**No. 87–1187.**

District of Columbia Court of Appeals.

Submitted April 25, 1989.
Decided May 26, 1989.

---

Robert Cadeaux and Melissa Rhea, Washington, D.C., were on the brief for appellant.

Frederick D. Cooke, Jr., Corp. Counsel, Charles L. Reischel, Deputy Corp. Counsel, Washington, D.C., and Martin B. White, Asst. Corp. Counsel, were on the brief for appellee.

Before FERREN and SCHWELB, Associate Judges, and GALLAGHER, Senior Judge.

FERREN, Associate Judge:

Eldridge Lee, appellant, suffered injuries from an on-the-job automobile accident. He filed a claim for workers' compensation benefits with his employer, the District of Columbia, and received $24,419.73 in employment compensation and medical and transportation benefits. Lee then filed suit for personal injury, pain and suffering, loss of employment time, medical and out-of-pocket expenses, and loss of consortium against the other party in the accident, the Washington Metropolitan Area Transit Authority (WMATA), under the Compulsory/No–Fault Motor Vehicle Insurance Act of 1982 (No–Fault Act), D.C.Code §§ 35–2101 to 35–2114. (1988). Lee settled for $150,000. Pursuant to D.C.Code § 1–624.32 (1987), the District demanded reimbursement for the workers' compensation benefits it had paid to Lee. As a consequence, Lee filed for a declaratory judgment, claiming that the settlement of his suit under the No–Fault Act was limited to recovery for noneconomic losses, that his workers' compensation benefits had been limited to recovery for economic losses, and that, because his No–Fault recovery did not overlap his workers' compensation benefits, he was not required to reimburse his employer under § 1–624.32. The District counterclaimed, arguing that D.C. Code § 1–624.32 (1987) establishes an unqualified right to reimbursement. The trial court ruled for the District. We agree and thus affirm. The plain language of § 1–624.32 creates an unqualified right of reimbursement for workers' compensation benefits paid, regardless of the type of damages recovered from the third party.

The No–Fault Act and the workers' compensation provisions of the Comprehensive Merit Personnel Act of 1978 (CMPA), *id.* §§ 1.624.1 through 1.624.46, provide two different compensation systems for accident victims. Under the No–Fault Act, a victim of a motor vehicle accident, without establishing fault, may receive personal injury protection benefits consisting of medical and rehabilitation expenses and payments for the loss of income suffered. D.C.Code § 35–2104 (1988). Under that Act, workers' compensation benefits received or receivable for the injury are to be subtracted from the amount of personal injury protection benefits that otherwise would be paid for such economic losses. D.C.Code § 35–2110(b)(2) (1988). Also, the No–Fault Act in effect at the time of Lee's accident limited a victim's rights against third parties allegedly responsible for the accident. However, Lee was entitled to sue WMATA for noneconomic damages, such as pain and suffering, because his medical expenses exceeded a $5,000 threshold.[1] D.C.Code § 35–2105(b)(6) (1984 Supp.).

---

**1.** In 1985, D.C.Law 6–104, § 2(d), modified this provision. Under present law, an accident victim may elect to sue in tort rather than receive personal injury protection benefits, regardless of the amount of medical expenses caused by the accident. 32 D.C.Reg. 7245, 7249 (1986).

Under the CMPA, an injured government worker, without establishing fault, may receive benefits for medical and rehabilitation expenses and some lost wages attributable to work related injuries. D.C.Code §§ 1–624.2 through 1–624.7 (1987). In return for these fixed but certain benefits, the employee may not sue the District in tort for the injuries. *Id.* at § 1–624.16(c); *Newman v. District of Columbia,* 518 A.2d 698, 704–05 (D.C.1986). The employee, however, may sue third party tortfeasors. But, if the employee collects damages from the third party for work-related injuries, § 1–624.32 requires the employee to reimburse the District for the workers' compensation benefits paid.[2]

For purposes of this appeal, the District is willing to assume, as Lee alleges, that his settlement with WMATA provided only for noneconomic losses.[3] We have not yet considered whether § 1–624.32 requires reimbursement to the District when the type of damages a District employee receives from a third party under the No–Fault Act (noneconomic damages) is different from the kind of losses paid by the District under the CMPA (economic losses). The Supreme Court, however, has interpreted an identical provision in the Federal Employment Compensation Act (FECA), 5 U.S.C. § 8132 (1982), to require reimbursement regardless of the type of damages recovered. *United States v. Lorenzetti,* 467 U.S. 167, 104 S.Ct. 2284, 81 L.Ed.2d 134 (1984). A

unanimous Supreme Court held that the plain language established a general right of reimbursement "without regard to whether the employee's third-party recovery includes losses that are excluded from FECA coverage." *Id.* at 174, 104 S.Ct. at 2289 (footnote omitted). The Supreme Court found further support for its interpretation in 5 U.S.C. § 8131 (1982), which creates an "unqualified" obligation of the employee to assign to the United States any cause of action arising from the injury. *Id.* at 175, 104 S.Ct. at 2290. The Supreme Court also found its interpretation of the statutory language consistent with the purpose of the provision as expressed in its legislative history: to minimize the cost of the FECA program to the federal government. *Id.* at 176–77, 104 S.Ct. at 2290–91.

We take the same approach here. Although, in interpreting local law adopted by the Council of the District of Columbia, we are not bound by the Supreme Court interpretation of federal law, we give "considerable deference" to FECA decisions in interpreting the compensation provisions of the CMPA because the statutory language is identical and because the legislative history of the CMPA compensation provisions shows that they are " 'essentially an enactment of current federal law.' " *Newman,* 518 A.2d at 704. The plain language of § 1–624.32, like the federal law, creates an unqualified right of the District to reimbursement when another person has an

---

2. The specific provision governing reimbursement provides in part:

> If an injury or death for which compensation is payable under this subchapter is caused under circumstances creating a legal liability in a person other than the District of Columbia government to pay damages, and a beneficiary entitled to compensation from the District of Columbia government for that injury or death receives money or other property in satisfaction of that liability as a result of suit or settlement by him or her in his or her behalf, the beneficiary, after deducting therefrom the costs of suit and a reasonable attorney's fee, shall refund to the District of Columbia government the amount of compensation paid by the District of Columbia government and credit any surplus on future payments of compensation payable to him or her for the same injury.

D.C.Code § 1–624.32 (1987).

3. In his complaint, Lee asked both for economic damages (loss of employment time and medical and out-of-pocket expenses) and for noneconomic damages (pain and suffering and loss of consortium). Because the District apparently was not party to the settlement and the settlement did not identify the kinds of damages WMATA paid, the District had no way of knowing whether the settlement was solely for noneconomic damages. Lee, however, was only entitled to recover noneconomic damages under the No–Fault Act. D.C.Code § 35–2105(b)(6) (1984 Supp.). Thus, the District apparently assumes that WMATA would only be willing to pay in settlement the kind of damages for which it could be sued: noneconomic damages. That assumption may or may not be valid. Based on the face of Lee's complaint, there is a possibility that Lee's settlement covered some economic damages.

established "legal liability" to pay "damages." *See Peoples Drug Stores v. District of Columbia*, 470 A.2d 751, 753 (D.C. 1983) (en banc) (when construing a statute, courts look first to plain language). The CMPA also contains a provision identical to § 8131 of the FECA, creating an unqualified obligation of the employee to assign to the District any cause of action resulting from the injury. D.C.Code § 1–624.31 (1987). While there is no useful legislative history concerning this provision of the CMPA,[4] the language of § 1–624.32 is consistent with the purpose of the federal law: limiting the expense of the compensation system to the District.[5]

Accordingly, based on the plain language of § 1–624.32 and the Supreme Court's interpretation of an identical federal provision, we hold that § 1–624.32 entitles the District to reimbursement for workers' compensation payments made to employees from tort recoveries for those same injuries, regardless of the nature of the damages recovered by the employees from the third parties.

*Affirmed.*

---

**4.** *See* Committee on Government Operations, Council of the District of Columbia, Committee Print No. 4 on Bill 2–10, "District of Columbia Comprehensive Merit Personnel Act of 1978," (July 5, 1978).

**5.** Two state courts have reached a different result in addressing this type of conflict between reimbursement provisions of workers' compensation laws and no-fault recovery. *See Great American Insurance Co. v. Queen*, 410 Mich. 73, 300 N.W.2d 895 (1980); *Vespaziani v. Insana*, 501 Pa. 612, 462 A.2d 669 (1983). The Pennsylvania workers' compensation statute at issue in *Vespaziani* gave the employer who had paid workers' compensation benefits a claim of subrogation to the employee's claims against third parties. 501 Pa. at 614, 462 A.2d at 670. Therefore, the Pennsylvania Supreme Court interpreted the state workers' compensation provision as only giving the employer the same rights that the employee would have under the no-fault system against a third party: a claim for amounts over the basic loss benefits provided under the no-fault act. 501 Pa. at 619, 462 A.2d at 673. The CMPA reimbursement provision, like the federal provision and unlike the Pennsylvania provision, does not create a subrogation right in the employer but, rather, gives the employer an absolute right of recovery which is not conditioned on the rights the employee has against third parties.

The Michigan workers' compensation reimbursement provision at issue in *Great American Insurance* is comparable to the District's law. Under the Michigan No–Fault law, a no-fault insurer's right to reimbursement from the accident victim is limited to circumstances where the victim receives a tort recovery for elements of damages already paid for by no-fault benefits, preventing the accident victim from recovering twice. *Great American Ins.*, 410 Mich. at 92, 300 N.W.2d at 899. The Michigan Supreme Court extended this policy, preventing double recovery, to the reimbursement rights of employers who had paid workers' compensation benefits to employees injured in on-the-job auto accidents. The court found a legislative intent to treat auto accident victims injured on-the-job the same as those injured while not on-the-job. The court, accordingly, held that, when workers' compensation benefits are paid in lieu of no-fault benefits, the employer's reimbursement right is the same as the no-fault insurer's reimbursement right under the No–Fault Act. 410 Mich. at 94, 300 N.W.2d at 900. This means that a government employer may seek reimbursement for workers' compensation benefits only to the extent the same kinds of benefits have been paid under the No–Fault Act. Given our deference to United States Supreme Court interpretations of FECA and the complete identity of the federal and the District of Columbia provisions, we choose to follow the Supreme Court interpretation rather than the Michigan approach.