## Watts v. Vanderpool

*Ronald Blumfield,* for plaintiffs.
*Richard D. Harburg,* for defendant.

SCOTT, *J.,* May 11, 1990 — This court is presented with a petition for leave to compromise settlement free of workmen's compensation lien filed by plaintiffs, John Watts and Elizabeth Watts. This petition results from an underlying tort action filed by plaintiffs under the above caption. This tort action resulted in an out-of-court resolution. Settlement proceeds in the amount of $11,000 were placed in an escrow account with the Bucks County prothonotary pursuant to the order entered by the Honorable Oscar S. Bortner[1] on June 24, 1988. The proceeds were escrowed pending determination of plaintiff's employer's subrogation claim against said proceeds for workmen's compensation benefits paid

---

1. The Honorable Oscar S. Bortner has retired and the case has been reassigned to the undersigned.

to plaintiff John Watts post-accident. For the reasons cited below we allow the subrogation claim.

The principal issue is whether the Pennsylvania No-fault Insurance Act, 40 P.S. §1009.101 et seq. (now repealed) is applicable to bar the rights of plaintiff's employer to subrogate against plaintiff's tort settlement proceeds for workmen's compensation benefits paid to plaintiff under the Pennsylvania Workman's Compensation Act, 77 P.S. §1 et seq., when the plaintiff/petitioner was injured in an accident occurring outside the Commonwealth of Pennsylvania. We conclude that under Pennsylvania law, the No-fault Act provides no such bar and subrogation is allowed.

The facts presented in the petition and not denied by the answer comprise the record. A review of the balance of the pleadings and court file in the underlying tort action reveals that on April 14, 1984, petitioner/plaintiff, John Watts, was operating a tractor-trailer owned by his employer, AAA Trucking, in the northbound lane of Route 31 in Mercer County, New Jersey. A Toyota pickup truck on the same day and approximate time was being operated by Robert Vanderpool in the opposite southbound lane of Route 31. As the two vehicles approached each other, the said Robert Vanderpool allegedly lost control of his pickup truck and entered the northbound lane. In the resulting collision Robert Vanderpool was killed. Petitioner, John Watts, driver of the said tractor-trailer, was injured and later instituted suit as above indicated.

Robert Vanderpool, decedent, and John and Elisabeth Watts were Pennsylvania residents at the time of the accident. Plaintiffs resided in Philadelphia and the administratrix of the tort-feasor resided in Holland, Bucks County, Pa.

Petitioner/plaintiff, John Watts, was operating the tractor-trailer at the time of the accident within the course and scope of his employment with AAA Trucking. AAA Trucking at that time was a New Jersey corporation doing business within the Commonwealth of Pennsylvania at 4355 Rising Sun Avenue, Philadelphia, Pa. It was at this Philadelphia business location that petitioner, John Watts, reported daily to work. He received his truck driving work assignments from this location and at the end of his work day, he would return his employer's tractor-trailer truck to this location.

As a result of petitioner John Watts' work-related injuries, he received Pennsylvania workmen's compensation benefits through his employer's workmen's compensation carrier totalling $6,009.37, consisting of $1,849.37 in medical specials and $4,160 in disability payments.

In response to plaintiffs' petition for leave to compromise settlement proceeds free of the workmen's compensation lien, the employer, AAA Trucking, asserts its right to reimbursement in the form of subrogation pursuant to section 319 of the Workman's Compensation Act (77 P.S. §671). AAA Trucking seeks the full reimbursement of $6,009.37 from the tort proceeds based on its traditional subrogation rights. AAA Trucking asserts that in no way does the No-fault Insurance Act apply to the within case. Petitioners argue that the Pennsylvania No-fault Insurance Act, 40 P.S. 1009.101 et seq., bars the subrogation claim of the employer and petitioners cite several cases in support thereof.

Petitioners and respondent urge the within court to apply Pennsylvania law to the case sub judice. We do so with no difficulty.

We note that had there been no agreement as to the application of Pennsylvania law over the laws of

the State of New Jersey, we still would be compelled to apply Pennsylvania law to the within case review. The courts in facing choice-of-law issues have abandoned the strict lex loci delicti rule. *Giovanetti v. Johns-Manville Corporation,* 372 Pa. Super. 431, 539 A.2d 871 (1988). "A less restrictive approach combining the methodologies of a 'government interest analysis' and the 'significant relationship' approach of the Restatement (Second) of Conflicts §145 (1971)" has been adopted. *Giovanetti, supra.* The analysis must include review of the policies of each respective state and the extent to which its policies and the connection and relevance to the dispute show a priority of interest in the application of its rule of law. *Myers v. Commercial Union Assurance Companies,* 506 Pa. 492, 485 A.2d 1113 (1984); *Giovanetti v. Johns-Manville Corporation, supra.* Further, it is the policy of this commonwealth that a victim's right to pursue a tort action is determined by the law of the domicile of said victim, which in this case, is the within commonwealth. 40 P.S. §1009.110(c)(2).

Clearly, if we were required to use the combined methodology analysis for choice of law, there are significant and qualitative contacts, interests and factors compelling the application of Pennsylvania law to the within case. Petitioners/plaintiffs are Pennsylvania residents and the tort-feasor and his administratrix were Pennsylvania residents at the time of the accident. Petitioner's employer operated a business within this commonwealth. The tractor-trailer involved in the New Jersey accident was stored and utilized on a daily basis within this commonwealth. Workmen's compensation benefits were paid to petitioner John Watts under the Pennsylvania act. Therefore, important Pennsylvania legal issues involving motor vehicle injuries to Penn-

sylvania residents exist, such as the interrelationship of the Pennsylvania No-fault Act with its attending policies and purposes (see generally 40 P.S. §1009.101(a) and (b)), with the Pennsylvania Workman's Compensation Act with its corresponding right for subrogation given to an employer when the employee recovers a settlement from a third-party tort suit (see generally section 317, 77 P.S. §671). Clearly, then, Pennsylvania law applied.

In applying Pennsylvania law, this court first looks to the said No-fault Act and case law for guidance. In doing so, we note that the No-fault Act itself makes the distinction between accidents that occur within the Commonwealth of Pennsylvania and outside the commonwealth. *Wiest v. Eazor Express Inc.,* 311 Pa. Super. 128, 457 A.2d 527 (1983). Where the accident occurs outside this commonwealth, the partial abolishment of tort liability as set forth in 40 P.S. §1009.301(a) is lifted. *Wiest, supra.* This means that an out-of-state victim is not precluded from the full cause of action for negligence in any way. Such a victim can sue in tort for economic loss that otherwise would be barred by the No-fault Act. *Id.*

Section 301 of Title 40, the No-fault Act, provides in pertinent part:

"(a) *Partial abolition* — Tort liability is abolished with respect to any injury that takes place *in this state* in accordance with the provisions of this act if such injury arises out of the maintenance or use of a motor vehicle except that:. . .." (emphasis supplied)

The tort-feasor will be exposed to potential liability for both economic and non-economic damages sustained by the victim. Such is the case under current review. At the time of this New Jersey accident, petitioners enjoyed the full ability to sue in

tort. Petitioners did sue in tort and a settlement was reached as against a third-party tort-feasor. Because full tort liability was available to petitioners, any payments received by the workmen's compensation carrier were not within the definition of basic loss benefits[2] under the act since petitioners had the right under the act to sue the third-party tort-feasor for such economic damages. Any such settlement then is a settlement for all of the damages sustained by petitioners. *Wiest, supra.* Consequently, because the settlement represents a recovery for all damages sustained, a workmen's compensation lien is created under the traditional subrogation provision of section 319 of the Workmen's Compensation Act. *Id.*

Petitioners cite *Brunelli v. Farelly Bros.*, 266 Pa. Super. 23, 402 A.2d 1058 (1979) for their contention that section 1009.111(a)(4)[3] specifically prohibits a workmen's compensation insurance carrier from subrogation for its payment of medical bills or wage loss incurred as a result of an employee's injury in an automobile accident. This is a misstatement of the holding in *Brunelli* and a misreading of the No-fault Act.

*Brunelli* involved a Pennsylvania accident and, therefore, is immediately distinguishable from the

2. "Basic loss benefits" is described in sections 1009.103 and 1009.202 of the No-fault Act, and provided unlimited reasonable and necessary medical and vocational rehabilitation services (as defined in section 1009.103), work-loss benefits up to a maximum of $15,000, replacement services losses up to a daily maximum of $25 for an aggregate period of one year and survivor's loss (as defined in section 1009.103) up to $5,000.

3. Section 1009.111(a)(4) of the No-fault Act provides that "In no event shall any entity providing benefits other than no-fault benefits to an individual as described in section 203 of this act [section 1009.203 of this title] have any right of subrogation with respect to said benefit."

142

within facts and thus not controlling to the facts before us. In *Brunelli,* the Superior Court interpreted section 1009.206(a)[4] of the No-fault Act as requiring all workmen's compensation benefits to first be subtracted from "loss" to calculate "net loss." *Brunelli, supra.* Because the court relied on section 206, it reasoned that all workmen's compensation benefits paid could never be payments received in excess of basic loss benefits. *Brunelli, supra.*

This reasoning has long been clarified and corrected by our Supreme Court in *Vespaziani v. Insana,* 501 Pa. 612, 462 A.2d 669 (1983). The Supreme Court stated:

"The conclusion that all workmen's compensation benefits payable are 'not amounts in excess of basic loss benefits,' (quoting *Brunelli v. Farelly Bros.*) and can never be recovered from a third-party tort-feasor arises from a misapplication of a portion of Article II of the No-fault Act intended to be employed in calculating the no fault *obligor's* liability, rather than third-party tort-feasor liability.

---

4.  "§1009.206. *Net Loss*

"(a) *General* — Except as provided in section 108(a)(3) of this act, [section 1009.108 of this title] all benefits or advantages (less reasonably incurred collection costs) that an individual receives or is entitled to receive from Social Security (except those benefits provided under Title XIX of the Social Security Act [42 U.S.C. §1396 et seq.] and except those Medicare benefits to which a person's entitlement depends upon use of his so-called 'lifetime reserve' of benefit days) workmen's compensation, any state-required temporary, non-occupational disability insurance, and all other benefits (except the proceeds of life insurance) received by or available to an individual because of the injury from any government, unless the law authorizing or providing for such benefits or advantages makes them excess or secondary to the benefits in accordance with this act, shall be subtracted from loss in calculating net loss."

Thus, the Superior Court reliance on section 206(a) is in error." *Vespaziani, supra.*

Section 1009.111(a)(4) refers directly to section 203 under Article II of the No-fault Act. Like *Vespaziani* where the court concluded section 206 reliance to bar subrogation was a misapplication of a portion of Article II and not a bar to subrogation, section 206, also under Article II, cannot here bar subrogation. Therefore, reliance on section 1009.111(a)(4) is in error and without merit.

In *Vespaziani,* the injured employee was paid by his employer's workmen's compensation carrier over $31,000 in "work loss" benefits, and the said carrier attempted to intervene in the underlying third-party tort action filed by the injured employee in order to subrogate on amounts it paid to employee beyond the $15,000 maximum work-loss benefits available under the No-fault Act. After much discussion on the coordinating effect of benefits received from a workmen's compensation carrier and a no-fault obligor, the court clearly held that beyond any contribution by the workmen's compensation carrier toward the maximum of $15,000 of basic loss benefits for "work loss" permissible under the No-fault Act, the No-fault Act did not bar the subrogation claim of the workmen's compensation carrier. *Id.* Consequently, amounts received by an injured employee from a workmen's compensation carrier in excess of basic loss benefits are unequivocally subject to the subrogation claim of the employer and its carrier.

Petitioners further argue that the reasoning in *Wiest* is in direct opposition to *Myers v. Commercial Union Assurance Companies,* 506 Pa. 492, 485 A.2d 1113 (1983). We do not agree. Initially, we dispose of this argument by noting that *Myers* involved an

accident occurring in Pennsylvania by an Illinois employee/resident.

In *Myers,* the injured Illinois employee was rendered a paraplegic when a Pennsylvania accident occurred with a Pennsylvania tort-feasor. Tort-feasor's no-fault carrier paid to Myers, the injured employee, the sums of $74,000 in medical expenses and $250,000 for non-economic loss. The $250,000 payment was in the form of a settlement in Myers' third-party tort action. *Myers, supra.*

Myers did not stop there. He was awarded in Illinois a workmen's compensation award of $120 per week for life from his Illinois employer's workmen's compensation carrier. *Id.* Myers never received medical expenses from the Illinois workmen's compensation carrier from the date of the accident to the day the workmen's compensation award was entered since the said carrier contended it had no obligation to do so in view of the tort-feasor's no-fault carrier's payment of same. *Id.*

The Pennsylvania court was faced with analyzing the legal issue of whether or not the Illinois workmen's compensation carrier was required under the Pennsylvania No-fault Act to reimburse to the Pennsylvania tort-feasor's no-fault carrier the medical expenses it (the tort-feasor's carrier) paid where Pennsylvania law required such reimbursement. *Myers, supra.* In reviewing this question the Pennsylvania Supreme Court concluded that Pennsylvania had significant interests in deciding this legal issue. It then held that the Pennsylvania No-fault Act required the Illinois workmen's compensation carrier to reimburse the Pennsylvania tort-feasor's no-fault carrier for medical expenses the workmen's compensation carrier was obligated to pay.

To suggest that the reasoning behind *Myers* in any way affects the holding in *Wiest* is thus without

any merit whatsoever. *Myers* involved a totally different issue. It was a subrogation issue between *obligors,* not as here, a subrogation claim by a workmen's compensation carrier against third-party tort settlement proceeds collected as a result of an out-of-state accident.

Finally, petitioners claim that an "evidentiary ruling" was made "pretrial" that John Watts was only entitled to non-economic recovery at trial. Petitioners assert that they settled the claim "in part" because of that "evidentiary ruling." Petitioners argue that because the court ruled that it would not permit petitioner to introduce evidence at trial as to the amount of bills and wage loss incurred by plaintiffs by reason of the accident, such ruling required further ruling that the employer is not entitled to subrogation.

This argument is disposed easily by a review of the record. No such evidentiary ruling appears of record. To conclude, therefore, that an evidentiary ruling of the kind asserted ever occurred is unquestionably meritless.

The court understands the policy decisions under the No-fault Act and referred to by *Vespaziani* and *Myers, supra.* We further understand the fact that had this accident occurred within this state, subrogation would have been barred.[5] *Wiest v. Eazor Express Inc., supra.* But, in view of the precedent of *Wiest,* and the plain reading of section 1009.301(a) of the No-fault Act, we can not hold otherwise.

The words of 40 P.S. 1009.301(a) are clear. The partial tort liability abolition extends only to in-state

5. This would be the case if the record revealed that the total contribution to the employee of wage loss by the compensation carrier and from any other source did not exceed $15,000, the maximum allowable for wage loss under the No-fault Act.

accidents. We conclude that if the legislature wanted this partial tort abolition to extend to out-of-state accidents it would have used the necessary language to avoid making the distinction that section 1009.301(a) makes. This court cannot go on a fishing expedition for "the spirit of the law" when the letter of the law is clear. *Walters v. Kamppi*, 118 Pa. Commw. 487, 545 A.2d 975 (1988).

We conclude for all of the above reasons that the No-fault Act's partial abolishment of tort liability was not applicable to bar the injured employee from a full tort remedy at law. Given same, any settlement amount must be deemed to include medical expenses and wage-loss benefits previously paid by the employer's compensation carrier. Consequently, the employer can subrogate against third-party settlement proceeds pursuant to the Pennsylvania Workman's Compensation Act as above stated.

For these reasons we entered the order signed February 27, 1990 denying the petition for leave to compromise settlement free of workmen's compensation lien, which order is being appealed.