607 A.2d 334

**GREATER LANCASTER DISPOSAL/SCA SERVICES, Petitioner,**

v.

**WORKMEN'S COMPENSATION APPEAL BOARD (Linda Jean & George W. SNOOK), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 17, 1991.

Decided April 10, 1992.

Reargument Denied June 19, 1992.

Michael W. Babic, for petitioner.

Robert Land, for respondent.

Before DOYLE and McGINLEY, JJ., and SILVESTRI, Senior Judge.

McGINLEY, Judge.

Greater Lancaster Disposal/SCA Services (Employer) appeals from an order of the Workmen's Compensation Appeal Board (Board) that reversed the referee's decision and reinstated compensation benefits to Linda Jean Snook (Claimant). The Board concluded that the referee committed an error of law by granting the Employer a subrogation lien against Claimant's third-party settlement.

On June 2, 1979, George W. Snook (Decedent) was killed when Employer's garbage truck "slipped backward down an incline and pinned him between the truck and a dock while he was working" at Employer's facility. Stipulation of Facts, May 2, 1988, No. 2; Reproduced Record (R.R.) at 3a. Decedent sustained multiple chest injuries resulting in his death. Decedent was within the course and scope of his employment at the time of the accident.

On June 19, 1979, Claimant entered into a compensation agreement with Employer and Liberty Mutual Insurance Company (Liberty Mutual), Employer's worker's compensation insurer. An amended agreement for compensation was entered into by the parties on August 15, 1979. Employer agreed to weekly compensation benefits of $216.14 in accordance with the schedule of compensation benefits payable to a widow with three children as set forth in Section 307(4½) of The Pennsylvania Workmen's Compensation Act

(Act).[1] Subsequently, Decedent's estate received wage loss benefits from Selected Risks Insurance Company (Selected Risks), Decedent's no-fault automobile insurer. On February 27, 1981, Selected Risks issued a check in the amount of $15,000 payable to Decedent's estate as "[f]inal wage payments resulting from and [sic] accident occurring on or about June 2, 1979."[2] Claimant's Exhibit No. 2, C.R.

In 1982 Claimant instituted a products liability action against General Motors Corporation, City Tank Corporation and Old Dominion Manufacturing Company, Inc., manufacturers of the garbage truck and its component parts, in the United States District Court for the Eastern District of Pennsylvania. After settlement discussions, Claimant agreed to $300,000 to settle the action. Claimant received $110,875.80 as well as $80,875.80 which was to be used "to open three separate insured savings accounts in the amount of $26,958.60" for each of her minor children. Stipulation

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 561. Section 307 of the Act relevantly provides:

    In case of death, compensation shall be computed on the following basis, and distributed to the following persons: Provided, That in no case shall the wages of the deceased be taken to be less than fifty per centum of the Statewide average weekly wage for purpose of this section:

    . . . .

    2. To the widow or widower, if there be no children, fifty-one per centum of wages....

    3. To the widow or widower, if there be one child, sixty per centum of wages....

    4. To the widow or widower, if there be two children, sixty-six and two-thirds per centum of wages....

    4½. To the widow or widower, if there be three or more children, sixty-six and two-thirds per centum of wages....

    77 P.S. § 561(2), (3), (4), and (4½).

2. Pursuant to Section 202(d) of the No-fault Act, 40 P.S. § 1009.202(d) Selected Risks issued a second check in the amount of $5,000 as "[f]ull and final settlement of Basic Survivor's Benefits in regard to an accident occurring on or about 6–2–79." Claimant's Exhibit No. 1, Certified Record (C.R.). "Survivor's benefits, by way of distinction, are what a survivor might reasonably have expected to receive from the victim in money or services, had the victim not sustained the fatal injury." *Smiley v. Ohio Casualty Insurance Company,* 309 Pa.Superior Ct. 247, 252, 455 A.2d 142, 145 (1983). "[A] survivor's claim is comparable to a wrongful death action." *Id.,* 309 Pa.Superior Ct. at 252, 455 A.2d at 145.

of Fact No. 8(D); R.R. at 4a–5a. On November 17, 1982, the settlement agreement was approved by the Honorable Daniel H. Huyett of the United States District Court for the Eastern District of Pennsylvania.

On June 28, 1985, Employer and Liberty Mutual filed a petition for suspension or modification of benefits under Section 319 of the Act, 77 P.S. § 671 asserting a right to subrogation and a credit for the proceeds of the third party settlement against any compensation paid or payable to Claimant.

In support of their petition Employer and Liberty Mutual presented the testimony of Robert Markee (Markee), former Line Supervisor [3] for Liberty Mutual. Markee testified that he had a phone conversation with Daniel L. Thistle, Esquire (Thistle), who represented Claimant in her products liability action. Markee testified that Thistle notified him that settlement negotiations were in progress. Markee stated that he informed Thistle that Liberty Mutual was not waiving its subrogation interest.

Claimant presented the testimony of Thistle. Thistle testified that he contacted Liberty Mutual twice concerning the status of its subrogation interest in the event that there was a settlement of the case. On the second contact he talked to Markee. Thistle stated that he informed Markee that an offer of $300,000 had been made and that he believed Liberty Mutual did not have a right of subrogation based on the Superior Court decision in *Vespaziani v. Insana*, 293 Pa. Superior Ct. 117, 437 A.2d 1234 (1981). Thistle stated that Markee agreed that Liberty Mutual did not have a right of subrogation.

The referee chose to accept the testimony of Markee and found that "neither Defendant [Employer] nor Liberty Mutual waived or agreed to waive its subrogation interest in

---

**3.** A Line Supervisor "reviewed in-coming new claims, made assignments to Field Adjusters, approved various payments, monitored the work product of the Adjusters and monitored the reserving of cases." Notes of Testimony, November 18, 1986, (N.T. 11/18/86) at 10; R.R. at 41a.

the third-party settlement or any rights of subrogation." Referee's Decision, February 14, 1989, Finding of Fact No. 13(f). The referee concluded that Claimant's third-party action was not brought under the Pennsylvania No-fault Motor Vehicle Insurance Act (No-fault Act).[4] The Board reversed and concluded that "Claimant's third-party action arose under the ... No–Fault ... Act" and that "our Superior Court had interpreted the No–Fault Act so as to deny a compensation carrier any subrogation rights to an employee's third party recovery." Board's Decision, November 13, 1990 at 3–4.

Our scope of review is limited to a determination of whether constitutional rights were violated, whether an error of law was committed, and whether the necessary findings of fact are supported by substantial evidence. *Boehm v. Workmen's Compensation Appeal Board (United Parcel Services)*, 133 Pa.Commonwealth Ct. 455, 576 A.2d 1163 (1990).

■ On appeal Employer contends that it is entitled to subrogation because Claimant's product liability action against the manufacturers of the garbage truck was separate and distinct from any no-fault action. Alternatively, Employer contends that it is entitled to a subrogation lien and credit for payments made in excess of $15,000 pursuant to our Supreme Court's decision in *Vespaziani v. Insana*, 501 Pa. 612, 462 A.2d 669 (1983).

> Section 319 of the Act, 77 P.S. § 671 relevantly provides: Where the compensable injury is caused in whole or in part by the act or omission of a third party, the employer shall be subrogated to the right of the employe ... against such third party to the extent of the compensation payable under this article by the employer.... Any recovery against such third person in excess of the compensation theretofore paid by the employer shall be paid forthwith to the employe, his personal representative, his

4. Act of July 19, 1974, P.L. 489, *repealed by* the Act of February 12, 1984, P.L. 26.

estate or his dependents, and shall be treated as an advance payment by the employer on account of any future instalments of compensation.

Court decisions at the time of Claimant's third-party settlement held that the employer and the employer's compensation insurer were precluded from asserting any subrogation interest under the No-fault Act. *See Vespaziani v. Insana,* 293 Pa.Superior Ct. 117, 437 A.2d 1234 (1981); *Erie Insurance Exchange v. Fleagle,* 285 Pa.Superior Ct. 310, 427 A.2d 651 (1981); *Brunelli v. Farelly Brothers,* 266 Pa.Superior Ct. 23, 402 A.2d 1058 (1979). However, our Supreme Court in *Vespaziani* granted allocatur and addressed "the question of the effect of the No–Fault Motor Vehicle Insurance Act on the employer's claim to subrogation under the Workmen's Compensation Act." *Vespaziani,* 501 Pa. at 614, 462 A.2d at 670.

In *Vespaziani,* Tony Vespaziani (Vespaziani) had been injured in a motor vehicle accident while in the course of employment for his employer, Eastern Express, Inc. (Eastern). Transport Insurance Company (Transport), Eastern's insurance compensation carrier, paid compensation benefits (work loss) in excess of $31,000. Vespaziani filed an action in trespass against the driver and the owner of the other vehicle. Transport petitioned to intervene pursuant to its right of subrogation under Section 319 of the Act, 77 P.S. § 671. The court of common pleas denied Transport's petition and the Superior Court affirmed relying on Section 206(a) of the No-fault Act, 40 P.S. § 1009.206(a).[5] The Supreme Court initially noted that if *Vespaziani* were not a vehicular negligence case Transport could assert its subrogation interest.

**5.** Section 206(a) of the No-fault Act relevantly provided that "all benefits or advantages ... that an individual receives or is entitled to receive from social security ... *workmen's compensation,* any State-required temporary, nonoccupational disability insurance, and all other benefits ... shall be subtracted from loss in calculating net loss." (Emphasis added.)

The Supreme Court then stated:

The No–Fault Act, in Section 206(a), coordinates workmen's compensation benefits with no-fault benefits, providing that no-fault benefits shall be paid to the injured for the 'net loss' suffered beyond that compensation by the workmen's compensation benefits. Since the Workmen's Compensation Act provides, in the typical case, that sixty-six and two-thirds percent of the wages of the injured employee shall be compensated, § 306(a). 77 P.S. § 551 et seq. the 'net loss' typically will be the remaining thirty-three and one-third percent of the wages of the injured employee. Therefore, by combining these benefits, the injured employee receives full compensation for his work loss: typically, sixty-six and two-thirds percent of the first $15,000 of that loss, i.e., $10,000 will be paid to the injured employee by the workmen's compensation carrier and thirty-three and one-third percent of that loss, i.e., $5,000 will be paid to the injured employee by the no-fault obligor.

Section 301(a)(4) of the No–Fault Act precludes recovery from a third party tortfeasor for the first $15,000 of work loss suffered. The contribution by the workmen's compensation carrier to the first $15,000 of work loss, typically $10,000 is therefore, compensation paid which cannot be recouped by the workmen's compensation carrier since there will be no recovery from the third party tortfeasor which represents this first $15,000.

. . . .

Accordingly, we hold that the subrogation claim of the workmen's compensation carrier is negated to the extent of those benefits paid by the workmen's compensation carrier which constitute a contribution toward the compensation of the first $15,000 of work loss sustained. Beyond the workmen's compensation carrier's contribution toward this first $15,000 of compensation, the subrogation claim for recovery of benefits payable has not been affected by the No–Fault Act.

*Id.*, 501 Pa. at 616–17, 619–20, 462 A.2d at 671–73 (footnotes omitted).

"In Pennsylvania, decisions changing the law are usually applied to cases pending on appeal. If such decisions rely upon statutory interpretations, they relate back to the date the particular statute became effective, because they merely interpret existing legislation." *Fairbanks v. Travelers Insurance Company*, 337 Pa.Superior Ct. 39, 42–43, 486 A.2d 469, 471 (1984) citing *McCloskey v. Workmen's Compensation Appeal Board*, 501 Pa. 93, 460 A.2d 237 (1983). The Supreme Court's interpretation of Section 206(a) of the No-fault Act in *Vespaziani* concerning the subrogation rights of compensation carriers relates back to the effective date of the statute.

Claimant and Employer agree that Claimant's third-party action against the manufacturers was based on a products liability theory.[6] Claimant alleged in her complaint that the manufacturers were negligent in the design and manufacture of the garbage truck and not that Decedent was a victim whose injury and death arose out of the use of a motor vehicle. Claimant's complaint[7] did not involve a third-party action under the No-fault Act. "Thus, under Section 319 the compensation paid by the employer to the date of the third-party recovery constitutes a claim against the fund resulting from the recovery, payable immediately to the employer upon recovery." *Bayush v. Workmen's Compensation Appeal Board (Conemaugh Township)*, 111 Pa.Commonwealth Ct. 617, 623, 534 A.2d 853, 857 (1987) (citing *Rollins Outdoor Advertising v. Workmen's Compensation Appeal Board*, 506 Pa. 592, 487 A.2d 794 (1985)).

6. Employer's attorney to Thistle:
   Q: Mr. Thistle, you were aware, at the time you brought this action-which was a product liability suit wasn't it?
   A: Yes, it was.
   Q: You've handled many, probably a hundred, product liability suits in your career?
   A: Easily.
   Q: And this was in your mind a product liability action against the defendants?
   A: Against these defendants, yes, without question.
   Notes of Testimony, September 27, 1988 at 19; R.R. at 91a.

7. Claimant's complaint is not part of the record, but the parties agree as to the nature of her third-party action.

"Any recovery in excess of the compensation paid to the date of recovery constitutes an advance of future compensation payable." *Id.* 111 Pa.Commonwealth Ct. at 623, 534 A.2d at 857. The Board's determination that Claimant's third-party action was initiated under the No-fault Act is not supported by substantial evidence. Employer is entitled to subrogation.[8]

■ There is one further aspect of this case which must be addressed. In *Anderson v. Greenville Borough,* 442 Pa. 11, 12, 273 A.2d 512, 513 (1971) Frederick Anderson was "struck and killed by a negligently operated vehicle while in the course of his employment as a police officer for the Borough of Greenville." Frederick was survived by a widow and six children. After his death, the widow and her children received compensation benefits. Subsequently, the widow filed a third-party action and settled the claim for $9,500. The employer sought a determination by the Board concerning its right of subrogation. The Board concluded that the employer was subrogated only to the extent of the widow's share of the settlement. The Supreme Court affirmed. In *Anderson* the Supreme Court stated:

Children, as provided in § 307, 77 P.S. § 561, are entitled to compensation in their own right only when the deceased is not survived by an eligible widow. When such a widow exists, the existence of children serves to generate a larger compensation payment to the widow. The children, however, in such a situation have no right of their own to recover compensation.... Therefore, it is clear ... the payments to the widow are made so that she may acquit her legal obligation to support her children ... and are not recovered by the children in their own right....

8. Claimant contends that the Superior Court in *West American Insurance Company v. Oberding,* 305 Pa.Superior Ct. 55, 451 A.2d 239 (1982) determined that the legislature enacted Section 111 of the No-fault Act, 40 P.S. § 1009.111 "with the intention of barring subrogation to a products liability claim." *Id.,* 305 Pa.Superior Ct. at 66, 451 A.2d at 244. *Oberding* is not controlling because Employer is exercising his right of subrogation under Section 319 of the Act, 77 P.S. § 671 and not the right of subrogation found in Section 111 of the No-fault Act.

. . . .

We hold that where a widow institutes a workmen's compensation action and an increased award to her is generated by the presence or existence of children, the compensation carrier is not subrogated to the recovery received by the children in a wrongful death action.

*Id.,* 442 Pa. at 15–16, 273 A.2d at 514–15 (citations omitted).

Claimant's complaint and the settlement agreement regarding her third-party action are not of record. The best that we can decipher and deduce is that Judge Huyett approved settlement of an action commenced under the Wrongful Death Act; Claimant's attorneys received $108,-248.40 for attorney's fees and costs; Claimant directly received $110,875.80; and Claimant also received $80,875.80 to be used to open savings accounts in the amount of $26,958.60 for each of her three minor children. Based on Judge Huyett's order the $80,875.80 recovery was in satisfaction of the claim of Decedent's children. As a result Employer has a right of subrogation only in the amount of $110,875.80. Here, pursuant to Section 319 of the Act, Employer has elected to pursue a credit against future installments of compensation. Employer's request is hereby granted.

Accordingly, we reverse the decision of the Board.

## ORDER

AND NOW, this 10th day of April, 1992, the order of the Workmen's Compensation Appeal Board in the above-captioned case is reversed.